**HILLMER et al. v. ASHER.   (No. 8151.)**

Court of Civil Appeals of Texas. San Antonio. Feb. 27, 1929.

Rehearing Granted May 22, 1929.   Rehearing Overruled July 10, 1929.

Hal Browne and J. E. Wilkins, both of San Antonio, for appellant Hillmer.

Thomson, Dilworth & Marshall, of San An-, tonio, for appellant Wick.

C. L. Bell, of San Antonio, for appellee.

FLY, C. J. This action is one for the recovery of four tracts of land lying in Karnes county, amounting in the aggregate to 850 acres, instituted by appellee against Erna Hillmer and H. T. Wick. The allegations show that appellee was engaged to be married to Erna Hillmer, and while so engaged was induced by said Erna to convey to her the four tracts of land, and to give her various sums of money and other personal property. As is too often the case, the fair widow changed her mind, if she ever intended to marry, and after receiving the property refused to carry out and execute the marriage contract, as appellee alleges she never intended to do. Erna Hillmer proceeded to convey two of the tracts of land, one containing 166⅔ acres, and the other 395.07 acres, to H. T. Wick, who purchased with knowledge of the fraud perpetrated on appellee. It was alleged that Wick was a conspirator with Erna Hillmer to defraud appellee, and consequently was not an innocent purchaser of the land. The cause was submitted to a jury on special issues, and on their answers thereto judgment was rendered in favor of appellee for all the relief sought by him in his pleadings. Both defendants in the lower court perfected appeals to this court.

The record is very cumbersome, more so than the issues justify; the transcript containing 169 pages, the statement of facts 232 pages, the brief for Erna Hillmer containing 85 pages, and the brief for Wick containing 218 pages; all of the record being typewritten matter.

Wick presents 52 propositions of law, covering 20 pages of his brief, these propositions being the offspring of 54 assignments of error, while 39 errors are assigned by Erna Hillmer, with 23 propositions dependent thereon.

The jury found that appellee conveyed the land in controversy to Erna Hillmer on January 4, 1927, in consideration of her promise to marry him immediately; that she failed and refused to marry him as she had promised; that she did not intend to marry appellee when she made the promise; that appellee, on July 6, 1925, gave Erna Hillmer $3,000 in consideration of her promise to marry him, and also paid her $4,000 on the same

consideration; that Wick was charged with knowledge of Erna Hillmer's fraud in obtaining the lands from appellee. The jury also found that the affidavit and confirmation of conveyances made by appellee were induced by promises and fraudulent representations on the part of appellant Erna Hillmer.

The facts show that appellee was 61 years old when he met and became infatuated with Mrs. Hillmer, and had spent his life on a farm and had by hard labor acquired a competency for his old age. He met Erna Hillmer at the bedside of a sick sister whom she was nursing. She admitted that she promised to marry appellee, that she got $3,000 from him, and bought a home for her daughter with that sum. She admitted having two husbands who had been divorced from her and were still living. She gave appellee nothing for the money nor the land except a promise to marry him. She also got an automobile from him worth at least $1,000. The land was very valuable, and she got besides thousands of dollars from the doting, unsophisticated old farmer, whom she skillfully and fraudulently deceived. The facts showed that Wick knew the consideration for the conveyance of the land to Erna Hillmer, knew that there would probably be trouble about the conveyance of land, and knowing this did not enter into an investigation which would have revealed the real condition of affairs, but bought two tracts of the land from Erna Hillmer. He not only could have known, but knew, that Erna Hillmer had defrauded Asher out of the land. He showed that he had no confidence in the deeds to Erna Hillmer, and he with Erna Hillmer procured the confirmation instrument from appellee. Wick knew the parties and should have known that the woman had the doting old farmer where he was ready and willing to perform her bidding. After knowing facts which should have convinced any prudent man, who desired to act justly, that the appellee was being defrauded of the labor of a lifetime, Wick became interested in the land within a month after the time it had been acquired by Erna Hillmer.

█ This suit was filed in Karnes county on May 7, 1927, and a plea that suits were filed in district courts of Bexar county thereafter, involving some of the same issues, was filed. The fact of the two suits being on file in Bexar county would not prevent appellee from setting up matters set out in the Bexar county courts by an amended petition, and did not subject the petition in this suit to a plea in abatement. The court in Karnes county first acquired jurisdiction and that was superior to any other court. Cleveland v. Ward. 116 Tex. 1, 285 S. W. 1063. The Supreme Court copied and adopted the rule in Freeman on Judgments, § 335, in which it is stated: "It seems impossible that two courts can, at the same time, possess the power to make a final determination of the same controversy

between the same parties. If either has authority to act, its action must necessarily be exclusive, and therefore it is our judgment that whenever either the state or national courts acquire jurisdiction of an action and the parties thereto, this jurisdiction cannot be destroyed, diminished, or suspended by one of the parties bringing an action in another court, and that any judgment or order of the latter court is void so far as it conflicts with any judgment or order of the court first acquiring jurisdiction." That case is cited by appellant Erna Hillmer, but it not only sustains the jurisdiction of the district court of Karnes county, but also holds that, the first court in which the case was filed having obtained jurisdiction, that court had authority "to permit the pleadings to be amended and amplified." The case by this court, Dickerson v. Hopkins, 288 S. W. 1103, is along the same lines. The money paid to Erna Hillmer by appellee was a part of the same case of fraud perpetrated through a promise to marry never intended to be fulfilled. The whole affair was in reality one case with the same fraud for its basis.

■ The other two suits are no longer a menace to Mrs. Hillmer. Certainly she cannot complain because appellee was not given judgment for the automobile which she obtained possession of by fraud and deceit and converted to her own use. The first and second propositions are overruled.

■ The third and fourth propositions are overruled. The court properly provided for excess arising from the sale of the San Antonio lot on which Mrs. Hillmer spent $3,000 of appellee's money to be applied on any other sum due appellee by her. The judgment was rendered for $4,000 besides the money expended by Mrs. Hillmer for a home for her daughter and her husband. There was nothing improper in that order. The authorities cited are not in point.

■ At some time during the trial, time not revealed by the bill of exception, counsel for appellee stated: "These two thieves did not trust each other." If this refers to Mrs. Hillmer and Wick, it is clearly evident that they did not trust each other. Mrs. Hillmer alone complains of the language used by the attorney, and the overwhelming weight of the evidence would justify the inference that deceit and rascality had been practiced. The testimony of Mrs. Hillmer herself showed that she had by fraud and deception obtained from appellee practically all the little fortune he had accumulated through many years of toil and deprivation of many of the comforts of life. She gave nothing but promises for the property, and it was shown convincingly that she at no time intended to perform her promises. This course of fraud and deceit was continued as long as the old man had anything she desired. There is really no proposition urging the impropriety of the language used

by the attorney, but simply that the court should have instructed the jury not to consider the remark of counsel. There was and is no contention that the testimony did not justify the accusation against Mrs. Hillmer and Wick by counsel. The fifth proposition as well as the sixth, which last complains because a verdict was not instructed for Mrs. Hillmer, are overruled. The case of Crow v. Ball, 99 S. W. 583, by this court, is in entire harmony with the ruling in this case. There is no evidence whatever of any passion or prejudice upon the part of the jury.

■ The conduct of appellant Hillmer should have convinced appellee long before it did that she was leading him along merely to get his property and did not intend to marry him. The episode on the morning after the execution of the deed to his land, the morning that was set apart for the marriage, when the fainting spell at the telephone was staged, and the pretended message of the pretended death of a pretended cousin was used to postpone the marriage, was enough to have aroused any man not so befuddled by infatuation for a woman as to be incapable of any sensible action, to the realization that he was in the clutches of a woman, who by experience and training could lead men to destruction. It did not awake appellee, and he not only allowed the deception of the dead cousin to prevail, but allowed her to drive off in his $1,000 to $1,500 automobile, which he never regained possession of again. And yet she insists that they were still engaged when appellee filed this suit. He was over 60 years old and she over 47, and time and approaching age cried out against mere engagements to marry. They might do for callow youth, but not for those in the "sere and yellow leaf," when the winter of life was well-nigh at hand. The seventh, eighth, ninth, tenth, eleventh, twelfth, and thirteenth propositions are overruled.

The fourteenth, fifteenth, sixteenth, seventeenth, and eighteenth propositions are clearly without merit and are overruled. The evidence indicates a well-laid plan upon the part of Erna Hillmer to lead appellee along with promises of marriage for many months, during which she was gathering in his lands and money, and when at last she thought she had obtained all of which he was possessed, she had no time to even converse with him for a few minutes and acted in such a way as to cause the benumbed intellect of her victim to realize that his presence was no longer desired. Then he awoke to a realization of having been duped and deceived and proceeded to use means to recover the property of which he had been craftily and deceitfully deprived.

The question of Mrs. Hillmer's fraud was presented to the jury by the charge of the court, and they found that the land was obtained through fraudulent promises of marriage; they found that she made the promise

of marriage and did not intend to carry the promise into effect. If the issues submitted did not lead to findings of facts that constituted fraud, it would be difficult to explain them. But Mrs. Hillmer in her fifteenth proposition flies to the relief of Wick on the ground that no issue of his fraud should be submitted, because the issue of her fraud had not been submitted. Facts constitute fraud whether labeled fraud or not, and the transactions of Mrs. Hillmer with appellee are reeking with fraud and deception. He was led on in a cunningly devised system, until his property was gone. In his heart was a belated dream of love and felicity, which passed into a horrible nightmare, followed by the awakening to the fact that it was all a dream except the fact that in his old age he had been deprived of the hard savings of a rugged lifetime. The actions of Mrs. Hillmer, from the time that his romance began to the end, were so closely knit together as to form a perfect net of conspiracy and fraud, and it was not error to submit all questions connected with the whole matter, the giving of money as well as of land. In view of all the testimony, she insists that appellee without any consideration placed all his property in her hands and allowed her to sell and appropriate the funds and use at least a portion of it in buying a home for her daughter, and then that she did not breach her promise of marriage. The engagement had continued for more than a year, and in the meantime his lands, his money, his automobile were dissipated and destroyed. The fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, nineteenth, twentieth, twenty-first, twenty-second, and twenty-third propositions are overruled.

The appellant Wick cannot obtain the benefits and exemptions of an innocent purchaser. He knew how the property was obtained, if he was not an actual participant in the fraud. He knew that Mrs. Hillmer had no property, he knew that she could not pay for any property, he knew that she was compelled to labor for a livelihood until she met appellee, and he knew that her check for $10,000, if she ever showed him such a check, was a "mere scrap of paper." He was warned by good citizens of Karnes county of the fraud that was being perpetrated, and if he paid Mrs. Hillmer anything for appellee's land he did it at his own risk, charged with notice of the fraudulent manner in which it had been obtained. He formulated the scheme to have the infatuated swain ratify and reaffirm the act of disposing of the fruits of the labor of a lifetime, because he desired to still further obscure the fraud in obtaining the property. He was a coconspirator of Mrs. Hillmer in depriving appellee of his property. Even if he was not in the conspiracy from the beginning, he entered into it while it was still operating and thereby became as guilty as those who initiated it. Wells v. Houston, 23 Tex. Civ. App. 629, 57 S. W. 584.

We turn our attention to the 52 propositions of appellant H. T. Wick, which on account of the length of the brief has entailed much labor. There is no merit in the first and second propositions. No issue as to appellee not understanding the confirmatory deed and the affidavit was submitted to the jury. However, as one of the circumstances in the continued fraud, it was legitimate to allege and prove that appellee was induced by false representations of Mrs. Hillmer in the presence of Wick to execute the instruments.

The third and fourth propositions assailing the pleading of appellee are overruled. The petition was sufficient to admit proof of Wick's participation in the fraud. From what has been held in regard to proof of Wick's participation in the fraud, it follows that the fifth, eighth, and ninth propositions must be overruled, as well as the sixth and seventh, which are not pertinent in this case but merely academic.

The objections to the charge are various but without merit. The cause was properly submitted. The 33 objections to the charge as embodied in propositions tenth to forty-second, inclusive, are overruled. It was not error to refuse additional charges.

The remaining propositions, from the forty-third to the fifty-first, inclusive, assail the answers of the jury to the issues. They were direct replies to the issues and were supported by the evidence. The propositions are overruled.

The evidence is sufficient to show a guilty knowledge, if not an active participation, by Wick in the fraud to deprive appellee of his property, and the fifty-second proposition will be overruled.

Fraud is often difficult to prove, but in this case the proof is clear. The proof shows a deliberate and continued system of false promises and fraudulent representations of a shrewd woman with much experience with men, playing upon the susceptibility, the infatuation, and dense ignorance of an old man, in order to deprive him of all he had, even to his home and automobile. The plot succeeded. The old man was an easy mark, and in the course of a year probably $40,000 or $50,000 worth of lands and personalty had passed from the labor-hardened hands of appellee into the deft hands of the San Antonio widow of more than one marital experience. The owner of the property was as helpless as a babe in the hands of the experienced widow, and he became her willing slave, ready to part with all he had to obtain her hand if not her heart. The facts connect Wick with the scheme in a way that has not been, and probably cannot be, explained. The verdict should be sustained.

The judgment is affirmed.

## On Motion for Rehearing.

In the opening of the motion for rehearing this court is informed, "This is not a fraud case," and this is the burden of the motion; and it is argued that the petition did not allege nor the verdict find fraud in the transaction between Erna Hillmer and appellee. The first allegation in the petition is that the lands of appellee were obtained "through fraudulent representations and false promises on the part of the said Erna Hillmer," and again it is alleged that, after certain detailed conduct on the part of Mrs. Hillmer, appellee "became convinced that she had purposely and fraudulently deceived him for the purpose of getting his property and cheating and defrauding him of the value thereof." This court concludes that under the direct allegations there is a "fraud case." The very narration of the facts found in the petition would raise the issue of fraud, even if the word "fraud" had not been mentioned in the pleading. The facts established the fraud beyond a doubt, and the facts found by the jury in answer to the special issues established fraud. The question of the fraud of Mrs. Hillmer was submitted to the jury, and the liability of Wick is made to turn in the seventh special issue on his knowledge of "the fraudulent manner, if any, in which the said Erna Hillmer had acquired said property, if she did fraudulently acquire the same from said Asher." In the ninth special issue the jury was asked: "Do you find from a preponderance of the evidence that at the time plaintiff, John Asher, executed the said affidavit and confirmation deed as described in plaintiff's petition, the said defendant, Erna Hillmer, made false and fraudulent representations and promises to the said John Asher for the purpose of influencing him and inducing him to execute said instruments?" The petition alleged fraud, the testimony established it, the court submitted it to the jury, and they answered that the evidence established fraud. Mrs. Hillmer gave nothing but promises for all of the property of appellee, promises that she never dreamed of carrying into execution, and she should not be allowed to profit by her fraudulent conduct, and deprive appellee of all the fruits of a lifetime of privation and hard labor.

Wick knew before he purchased that the only consideration for the land, received by appellee, was the promise of a woman to marry him. He was told this before he purchased. He was told that appellee's neighbors thought he had been defrauded out of his property, through his infatuation for Mrs. Hillmer. Wick admitted he heard that before and he was told there would be trouble about it. If he made any inquiry as to the consideration, it is not disclosed. Simply by asking Mrs. Hillmer he could have ascertained if she paid anything to appellee. He made no inquiry about the land until after he had concluded to purchase it, and then only as to the 166⅔-acre tract, and only made that inquiry in order to satisfy parties from whom he desired to obtain a loan on the land. He made no inquiry whatever about the 395-acre tract of land that he purchased from Mrs. Hillmer, and the confirmatory deed from appellee and the affidavit obtained from him made no reference to the 395 acres of land. Those two instruments mentioned only the 166⅔-acre tract. There were suspicious circumstances surrounding the whole transaction, and yet through it all appellee seemed determined to give his land to a woman who had given nothing for it, except a hollow promise to marry him, which she evidently never intended to put into execution. However, his persistency in the assertion that the property belonged to Mrs. Hillmer may have misled Wick and caused him to buy the land. While the writer of this opinion is convinced that Wick must have known that there was no consideration for the sale of the land to Mrs. Hillmer, still the evidence upon which his bad faith must rest is not of such a convincing and satisfactory nature as to uphold a verdict and sustain a judgment. The evidence has not been developed in the case as it should have been, not only as to the fact of notice, but as to the state of mind of the old farmer who was the willing victim of a woman bent on depriving him of all his property and then cast him aside.

We would not hesitate to affirm the judgment as to Mrs. Hillmer, were it not that such affirmance might deprive appellee of the right to a judgment for an additional amount in case a judgment should be rendered in favor of H. T. Wick on another trial. Appellee should be recompensed by Mrs. Hillmer for any land that might be adjudged to Wick on the ground that he was an innocent purchaser for value, with a lien on the apartment obtained by her from Wick.

We have concluded to grant a rehearing and reverse the judgment and remand the cause with instructions to the trial court to render the judgment against Mrs. Hillmer in favor of John H. Asher, as prayed for in his petition, and in case Wick should obtain a judgment in his favor on another trial, then to include in the judgment in favor of appellee against Mrs. Hillmer the full value of the property adjudged to Wick. On another trial the investigation should be confined to the bona fides of H. T. Wick in the purchase of appellee's property from Mrs. Hillmer. The costs of this appeal are taxed against Mrs. Hillmer.

Reversed and remanded, with instructions.