### WICK v. EXPRESS PUB. CO.
### No. 2633.

Court of Civil Appeals of Texas. Beaumont.
Oct. 4, 1934.

Dilworth & Marshall, of San Antonio, and Linebaugh & Guittard, of Victoria, for appellant.

Denman, Franklin & Denman, of San Antonio, and Procter, Vandenberge, Crain & Vandenberge, of Victoria, for appellee.

WALKER, Chief Justice.

This appeal was prosecuted to the San Antonio Court of Civil Appeals, transferred to this court by orders of the Supreme Court.

Appellant, H. T. Wick, instituted this suit against appellee, Express Publishing Company, for damages for libel, and the appeal was prosecuted by him from the judgment of the lower court sustaining appellee's general demurrer against his petition. We take the following summary of the allegations of his petition from his brief:

"After formal allegations, the plaintiff alleged in substance that he and one Erna Hillmer had been sued as co-defendants in the District Court of Karnes County, Texas, by one J. H. Asher; in which suit the said Asher charged and alleged that the said Hillmer had induced him by fraud to convey certain valuable lands situated in Karnes County, Texas, to her and further charged and alleged in said suit that this plaintiff (one of the defendants in the suit filed by the said Asher) was a party to the fraud practiced on him by the said Hillmer and had entered into a conspiracy with the said Hillmer to defraud him (Asher) out of his said property; that on the trial of said suit at Karnes County, an adverse judgment was rendered against the plaintiff herein; that on appeal of said cause to the Court of Civil Appeals for the 4th Supreme Judicial District of Texas, Hillmer v. Asher, 19 S.W.(2d) 89, the judgment of the trial court was affirmed, and in the opinion of the court so affirming said cause, it was held that the plaintiff (Wick) was guilty of fraud and conspiracy, or, at least,

that he had a guilty knowledge of the fraud practiced by Erna Hillmer on the said Asher, and, therefore, was not an innocent purchaser of the real estate which had been conveyed to him by the said Hillmer; and in such opinion, the Court of Civil Appeals, among other things, said:

" 'The old man was an easy mark, and in the course of a year probably $40,000.00 or $50,000.00 of lands and personalty had passed from the labor hardened hands of Asher into the deft hands of the San Antonio widow of more than one marital experience. The owner of the property was as helpless as a babe in the hands of the experienced widow, and he became her willing slave, ready to part with all he had to obtain her hand if not her heart. The facts connect Wicks with the scheme in a way that has not been and probably cannot be explained'; that thereafter, upon motion for rehearing filed by plaintiff in the Court of Civil Appeals, the said Court of Civil Appeals set aside its previous opinion and held that the evidence in said cause of Asher v. Hillmer, et al., was insufficient to sustain the finding that Wick had conspired with Erna Hillmer or that he was not an innocent purchaser of the land which he bought from Mrs. Hillmer, and reversed the judgment of the trial court and remanded the cause for a new trial; that thereafter, the plaintiff (Wick) applied to the Supreme Court of Texas for a writ of error to review the judgment of the Court of Civil Appeals, and that on November 27th, 1929, such application was granted; that on the 28th day of November, 1929, the defendant in this suit (Express Publishing Company) published in its daily newspaper, The San Antonio Express, the following purported report of said proceedings:

" 'Supreme Court to Review Case of Karnes County Farmer Seeking to Recover Property from Widow
(Express Austin Bureau)

" 'Austin, Tex., Nov. 27. The Supreme Court Wednesday decided to hear the arguments and write an opinion in a case where an old farmer, more than 61 years of age, seeks recovery of land and money valued at thousands of dollars, from a twice widowed woman of 41 years of age whom he alleges promised to marry him. There are two cases, Erna Hillmer et al. vs. J. H. Asher and H. T. Wick vs. J. H. Asher, from Karnes County. The record asserts that Mrs. Hillmer has two living divorced husbands.

" ' "The old man was an easy mark," reads the opinion of Chief Justice Fly of the San Antonio Supreme Court, in affirming judgment to recover to the old man his land and money, "and in the course of a year probably $40,000.00 or $50,000.00 of lands and personalty had passed from the labor hardened hands of Asher into the deft hands of the San Antonio widow of more than one marital experience. The owner of the property was as helpless as a babe in the hands of the experienced widow and he became her willing slave, ready to part with all he had to obtain her hand if not her heart. The facts connect Wicks with the scheme in a way that has not been and probably cannot be explained."

" 'It was alleged by Asher that upon promises to marry him he had deeded four tracts of valuable farming land aggregating 850 acres, had given her $3,000. in cash and then $4,000 in cash and that his automobile valued at about $1,500 had also been given to the woman. Subsequently, she conveyed two tracts to Wick, one for 166 acres and the other for 395 acres. It was alleged that Wick was a conspirator with Erna and Asher sought the recovery of all and obtained a favorable judgment below which was affirmed by the San Antonio Appellate Court. It was alleged and sustained in Judge Fly's opinion that Wick conspired with Erna and therefore was not an innocent purchaser of the two tracts of land, hence Asher is entitled to recover.

" 'It is stated in the opinion that Asher's life's earnings were heaped upon the widow in expectation of marrying her and that he never received any benefits in return for it; that he was an inexperienced, doting old farmer. He met the widow when the latter was nursing his sister according to the opinion.

" 'Writ of error was granted because of errors by the courts below in their ruling as to the liability between Wick and Mrs. Hillmer.'

"The petition of this plaintiff then further alleged that said publication was libelous in that it contained false and untrue statements of and concerning plaintiff, and then at length set forth the particular respects in which the same was alleged to be false; and said petition further alleged that said publication was libelous, untrue and false in that it did not constitute a fair, true and impartial account of the proceedings which it purported to report; and then set out in detail the particulars wherein the same was not true, fair and impartial. The said petition

480

further alleged that the statement contained in said article, as follows:

" 'Writ of error was granted because of errors by the courts below in their ruling as to the liability between Wick and Mrs. Hillmer,' was not fair or true, in that in truth and in fact, the writ of error was granted to review the entire case; and, upon a hearing, the Supreme Court held that there was no evidence sufficient to sustain the charges of fraud and conspiracy to defraud brought against Wick, but on the contrary the undisputed evidence showed that Wick was an innocent purchaser of the land which Asher sought to recover, and the Supreme Court reversed the judgment of the trial court and of the Court of Civil Appeals and rendered judgment in favor of Wick, Hillmer v. Asher (Tex. Com. App.) 29 S.W.(2d) 1011; and that said quoted portion of said article was unfair and untrue in that, construed with other portions of said article, it meant that Wick had been finally adjudged guilty of a fraud by the Court of Civil Appeals and that the Supreme Court would not review such finding but would only review the question of liability between Wick and Mrs. Hillmer."

The opinion on rehearing was not pleaded by appellant, nor was it stated that the discussion of his character in the opinion on rehearing was more favorable to him than the original opinion, nor was it alleged that at the time appellee published the article complained of it had any knowledge of the opinion on rehearing.

### Opinion.

■ The general demurrer was correctly sustained. Article 5432 of the Revised Statutes, as amended by the Fortieth Legislature (chapter 80, § 2), Vernon's Ann. Civ. St. art. 5432), reads as follows:

"The publication of the following matters by any newspaper or periodical, shall be deemed privileged, and shall not be made the basis of any action for libel: * * *

"1. A fair, true and impartial account of the proceedings in a court of justice, unless the court prohibits the publication of same, when in the judgment of the court the ends of justice demand that the same should not be published, and the court so orders; or any other official proceedings authorized by law in the administration of the law."

It was made to appear by the allegations of the petition that every fact stated in the article was literally true; that is, Judge Fly's very words were quoted in the opinion,

and the petition does not deny that the Supreme Court, in granting the writ of error, made the notation stated by the article. Appellant's cause of action was based upon the fact that appellee failed to state in the article that an opinion on rehearing reversing and remanding the cause of action as to appellant had been written by Judge Fly, and that in granting the writ of error the Supreme Court had jurisdiction to review all errors properly assigned by appellant. All our libel statute requires is that the newspaper publish "a fair, true and impartial account of the proceedings in a court of justice." This does not mean that the paper must wait until final judgment has been rendered in the judicial proceeding and then base its publication upon an examination of the entire record in the case. The full measure of the law is met when a fair, true, and impartial account is published by the paper of the particular portion of the record actually published.

In Belo & Co. v. Lacy (Tex. Civ. App.) 111 S. W. 215, 218, the court announced the following legal proposition: "If the publication is true, as shown by the record itself, then the publication is privileged if purporting to be a mere publication of an official proceeding, shown by an official record required by law to be kept in the administration of the law."

In that case the county attorney filed suit against Lacy and the sureties on his liquor dealer's bond to recover statutory penalties for maintaining a screen at his door preventing an open view of his saloon and for conducting prohibited games on his premises. The clerk properly docketed the case, and under the heading of the docket "Cause of Action" entered the words "Penalty for keeping disorderly house." The Dallas News, in its publication of the court proceedings, published the fact that the state of Texas had filed suit against Lacy and his bondsmen for keeping a disorderly house. Judgment was rendered in the trial court against the newspaper, which was reversed and rendered in favor of the newspaper on the holding that the record made by the clerk was a public record, and that the entries so made were public records. The effect of the holding in that case was that the newspaper was not required to publish the entire proceedings and was not guilty of libel where the proceedings published were literally true.

The first syllabus in Boogher v. Knapp, 97 Mo. 122, 11 S. W. 45, by the Supreme Court of Missouri, reads as follows: "In an action

for libel, a charge that plaintiff had been 'tried for conspiracy and libel, and convicted,' stated merely as a fact germane to the subject being treated of, is justified, if literally true, though plaintiff, after the conviction 'and before the publication, had succeeded in having one case against him dismissed, and had taken an appeal in the other."

Supporting the syllabus, the Supreme Court said: "The plea of the defendants to the second count was that the statement was true, and it will be observed from the foregoing statement of facts that the published statement was literally true, for it appeared by the record of the criminal court that within two years before the publication (about the time therein stated) the plaintiff had been tried for conspiracy and libel, and convicted in the court of criminal correction. It detracted nothing from the verity of that statement that, after he was thus tried and convicted, he had secured a new trial in the conspiracy case, and afterwards had succeeded in having the same dismissed, and had taken an appeal in the libel case before the publication was made. The fact still remained as charged in the publication that he 'was tried for conspiracy and libel, and convicted in the court of criminal correction.' "

See, also, Beiser v. Scripps-McRae Pub. Co., 113 Ky. 383, 68 S. W. 457; Express Publishing Co. v. Keeran (Tex. Com. App.) 284 S. W. 913, directly in point in support of our conclusion.

■■■ By innuendoes appellant sought to show that the alleged libelous publication was subject to the inference that the original opinion of Judge Fly correctly reflected the final judgment of the San Antonio Court of Civil Appeals. The language of the publication was not subject to that construction. As already stated, everything said in the publication was literally true. The natural meaning of the words used in the publication cannot be enlarged nor distorted, nor can new matter, not a part of the publication, be resorted to to support an innuendo.

In Fuson v. Abilene Gas & Electric Co. (Tex. Civ. App.) 219 S. W. 208, 209, the electric company's manager wrote a customer as follows: "I have been advised that the electric meter which we have had at your residence has been tampered with since it was installed. * * * This letter is to advise you that 'we must hold you responsible for the safety of the meter. * * * The case had the appearance of having been removed from the meter. * * *"

The customer sued for damages, contending that there was an innuendo that he had tampered with the meter. The court held that the words did not convey a defamatory meaning, and that the plaintiff would not be permitted to introduce new matter nor enlarge the natural meanings of the words used, that the letter did not charge plaintiff with tampering with the meter, and that the plaintiff could not add to the plain language by innuendo so as to place a construction upon the letter of which it was not fairly susceptible, citing Galveston Tribune v. Guisti (Tex. Civ. App.) 134 S. W. 239.

Under the holding in Express Pub. Co. v. Wilkins (Tex. Civ. App.) 218 S. W. 614, 617, "whether a publication is privileged or not is a question of law for the determination of the court," it was the prerogative of the court, by ruling on appellee's general demurrer, and not a fact question for the jury, to adjudicate the sufficiency of appellant's petition to state a cause of action. See, also, Cresson v. Wortham-Carter Pub. Co. (Tex. Civ. App.) 248 S. W. 1077, 1081.

It follows that the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.