GUARDIAN LIFE INS. CO. OF TEXAS v. REAGAN.

No. 14279.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 17, 1941.

Rehearing Denied Nov. 28, 1941.

J. Alex Blakeley and Chrestman, Brundidge, Fountain, Elliott & Bateman, all of Dallas, for appellant.

W. A. Hawkins, Clark, Craik, Burns & Weddell, and J. Harold Craik, all of Fort Worth, for appellee.

SPEER, Justice.

Plaintiff C. R. Reagan sued defendant Guardian Life Insurance Company for damages alleged to have been sustained on account of the publication by defendant of a statement alleged to be of a defamatory nature about plaintiff.

The parties to this appeal will bear the same designation as that carried by them in the trial court.

At the time of and for some period prior to the dates involved in this suit, R. L. Brewer and G. J. Nelligan were agents of defendant in Tarrant County, Texas, and W. E. Rose was Agency Director for defendant at its home office in Dallas, Texas. Plaintiff C. R. Reagan had worked for defendant as a soliciting and collecting agent for a period of time ending shortly before the date on which the alleged libelous statement was published.

The suit was based primarily upon the fact that defendant, acting through its agents Nelligan and Rose, caused a certain written statement to be filed with the Board of Insurance Commissioners of Texas. The statement complained of reads as follows:

"Fort Worth, Texas, Sept. 16–38

"To Whom It May Concern:

"On Thursday, Sept. 15 about 3 P. M., C. R. Reagan, who used to collect our insurance with the Guardian Life Ins. Co. several years ago, came to my house and told me he came to collect for our insurance. He said that he had left Mr. R. L. Brewer, (our present collector for the Guardian Life Ins. Co.) at the office but that he was here to collect for the Guardian Life Ins. Co.

"I told him he would have to come when my husband was home, and he said he would come back at 5–30. He has not returned.

"I have stated the truth and have done so of my own free will.

her
"(Signed) Florence (x) Aquilar
mark
210 E. First St., Fort Worth.

"Witness:
"G. J. Nelligan
"Roy L. Brewer."

Mr. Nelligan testified that he went to the home of Florence Aquilar, a Mexican woman, who carried a policy with defendant, to investigate a statement that R. L. Brewer had told him the woman had made the preceding day. That she spoke very good English and told him of Mr. Reagan's visit there on the day before; that he wrote down her statement and had her sign it in the presence of Mr. Brewer; that he mailed the statement, as he had written it, to his superior officer, Mr. Rose, Agency Director, at the home office in Dallas, and asked him for advice concerning it. Thereafter, Rose had occasion to go to Austin and while there filed the statement with the Board.

Plaintiff's pleadings charge that said statement was defamatory to his good name and reputation, was untrue and a libel against him; that said statement was intended by defendant to and was understood by the Board to mean that plaintiff had at-

tempted to collect moneys belonging to defendant, without authority from defendant, "with the intent on the part of plaintiff to take and steal the same". Allegations of malice and want of good faith by defendant were made.

Defendant answered with general demurrer and special exceptions to practically every paragraph of the petition; a general denial and by special denials of each wrongful act complained of by plaintiff. It further answered that the statement filed with the Board was absolutely privileged and in the alternative, that it was qualifiedly privileged.

Upon special issues, there were jury findings to the effect that Mrs. Aquilar did not make the statements to Nelligan as contained in the document filed with the Board; she did not sign the statement by making her mark thereon; the statement was neither absolutely nor conditionally privileged; that malice toward plaintiff actuated the filing of the statement with the Board; and that plaintiff sustained damages in an amount named.

Defendant filed its motion for judgment non obstante veredicto, asserting, among other things, that the court should disregard the jury findings that the statement was neither absolutely nor conditionally privileged because those were matters of law for determination by the court and not by the jury, and because there was no evidence of probative force to support the special jury finding of malice. The motion was overruled, and after requiring a remittitur by plaintiff of a specified amount, judgment was entered in favor of plaintiff for the remainder found by the jury. Motion for new trial was made, in which the points here raised were presented. The motion being overruled, this appeal was perfected by defendant.

Defendant's first proposition complains (1) of the court's action in overruling the general demurrer, (2) in overruling its special exception to plaintiff's allegations that the statement meant that he had attempted to collect moneys belonging to defendant, with intent to steal it, (3) in admitting in evidence the statement, and (4) in not directing a verdict in favor of defendant. These points are based upon defendant's assignments of error 1, 2 and 3. They relate to the same issue and may be considered by us in the manner presented.

■ We see no error in overruling the general demurrer and special exception.

The petition as a whole alleged publication of the statement to various persons other than by filing it with the Board; while none of such other publications was attempted to be proved, yet the court could only consider the allegations in the petition at the time the demurrers were presented. While plaintiff's inuendo, to the effect that defendant meant for the statement to mean that plaintiff had attempted to collect the money with intent to steal it, was not necessary to support a recovery, it was not an unreasonable deduction from the language used in the statement. However, the wording of the statement was not ambiguous and to our minds needed no explanation nor inuendo to convey its meaning. On its face it was defamatory and tended to injure the reputation of plaintiff and to impeach his honesty and integrity, as provided by our statutes on libel, as set out in Article 5430, R.C.S. Nor do we believe there is error shown in admitting the offending statement in evidence at the time it was offered. The statement and its publication were the primary grounds of plaintiff's right of recovery. That part of the proposition under consideration which contends that an instructed verdict for defendant should have been given is well taken and we will discuss it presently.

Second point raised by defendant is to the effect that since the testimony showed that the only publication of the statement made by defendant was by filing it with the Board of Insurance Commissioners, it was privileged or conditionally privileged, therefore no right of recovery was shown and the court should have instructed a verdict for defendant.

■ Under our view of the applicable law and the undisputed facts, we are definitely of the opinion that the statement filed with the Board was absolutely privileged and will not support a recovery. Under Vernon's Ann.St. Texas Constitution Art. 16, Section 38, the Legislature was authorized to create the office of Commissioner of Insurance. This was done and by subsequent acts the duties imposed upon him have been delegated to the Board of Insurance Commissioners, composed of three members, and their respective duties prescribed. Arts. 4679a et. seq., Vernon's Annotated Civil Statutes of Texas.

The rapidly changing conditions and development of trade relations among our

people have all but compelled the necessity of the creation by the Legislature under constitutional authority, of Boards and Commissions clothed with authority to act for the State in matters falling within the realm for which each was created. They thereby become an arm of and a part of the government and may function as such. Many of these departments are not specifically classified as falling within either the executive, judicial or legislative branches of the government. Certain of these commissions are clothed with duties which may incidentally involve some of the elements of the executive, judicial and legislative branches. They may in some instances legislate such rules and regulations as are necessary for the execution of the duties to be performed and then may judicially determine whether or not such regulations have been complied with. These functions have been so universally recognized by our courts that we need not now review them.

Under Article 4679c, the Life Insurance Commissioner is chairman of the Board and has supervision of matters relating to life insurance, to the chartering of companies, certificates of authority, etc., and by Article 4682, subdivision (1), the Board shall see that all laws respecting insurance and insurance companies are faithfully executed. By subdivision (11) of the same article it is made the duty of the Board to suspend the entire business of any insurance company during any period of noncompliance with the laws relative to insurance. For the purpose of determining whether or not such companies are complying with the law it is provided by Article 4690 that the Board shall make diligent inquiry as often as deemed necessary to ascertain whether or not the law is being violated. For this purpose the chairman shall have power to summon and examine under oath the officers, employees and agents of the companies, and any other person within the State, relative to the affairs of the company under investigation. To the same effect is subdivision (2) of Article 4691. By Article 5068b it is made the duty of the Board to issue an annual license to persons applying therefor, permitting them to solicit insurance for any named company, when the Board is satisfied that the applicant is of good character and reputation. By subdivision (4) of that article the Board shall make diligent inquiry into the fitness of such applicant before issuing a license or canceling one after its issuance. If the license is denied by the Board or if the Board for cause believes that a previously issued license should be canceled, notice to the party must be given and a hearing had thereon by the Board. If the applicant or licensee is dissatisfied with the Board's action, he shall have redress to the courts as in civil suits.

In Aransas Harbor Terminal Ry. Co. v. Taber, Tex.Com.App., 235 S.W. 841, adopted by the Supreme Court, the statutory provisions relating to the duties and powers of the Railroad Commission were discussed. Its powers were said to embrace all necessary investigations and hearings on violations of the laws which that Commission was required to enforce. After relating its authority to summon and hear witnesses on their oath and to enter orders, judgments and decrees thereon, the court said that regularly constituted legal tribunals could do no more. From these findings it was held that the Railroad Commission was a quasi judicial body and that pertinent statements made to it during such investigations were absolutely privileged, and could afford no basis for an action of libel growing out of the proceedings there had, citing Runge v. Franklin, 72 Tex. 585, 10 S.W. 721, 3 L.R.A. 417, 13 Am.St.Rep. 833.

We can see no difference in the rule there announced as applicable to the Railroad Commission and that involved in this case relating to the Board of Insurance Commissioners. Each has the same powers and duties concerning the matters falling within its respective jurisdiction. The Board, in each instance, is made an arm of the State government, and as such has quasi judicial powers to the same extent that our State courts have. Their judgments are binding on all parties involved until set aside by a legal tribunal, authorized by law to review their actions. Aransas Harbor Terminal Railroad Co. v. Taber, supra, 235 S.W. 841; Producers' Refining Co. v. Missouri, K. & T. Ry. Co., Tex.Com. App., 13 S.W.2d 679; Texarkana & Ft. S. Ry. Co. v. Houston Gas & Fuel Co., 121 Tex. 594, 51 S.W.2d 284; and Johnson Refinery Co. v. State et al., Tex.Civ.App., 85 S.W.2d 948.

It is no longer seriously questioned, that all proceedings had in the courts of this State are absolutely privileged, and in no event will any part thereof afford grounds for an action of libel. In-

formation communicated to an officer whose duty it is to investigate the truth thereof and to take such action thereon as is justified in law is absolutely privileged. The falsity of such written communication or the malicious intent of its writer do not become matters for judicial inquiry. Hott v. Yarbrough, 112 Tex. 179, 245 S.W. 676.

It is true that there was no hearing pending before the Board of Insurance Commissioners to determine whether or not the license theretofore issued to plaintiff would be revoked, when the statement was filed with the Board, but it is made the duty of the Board to make inquiries and gather information at all times which relates to the fitness of agents who have been licensed.

The Board had specifically instructed the officers of defendant to furnish it with any information bearing upon such questions. Mr. Rose, who left the statement with the Board, said that he did so in obedience to those instructions. What the Board did with the document, or whether it ever acted upon it, was no immediate concern of defendant, and we believe defendant was well within its rights if not under its duty, for Rose to file the statement as he did.

There are many decisions of our courts which discuss the question of various types of malice in connection with immunity from damages for the publication of libelous instruments, but we have found none which hold that the element of malice enters into a libel when the instrument complained of is one absolutely privileged under the law.

■ Plaintiff (appellee) contends that this case is analogous to the rule announced in Koehler v. Dubose, Tex.Civ. App., 200 S.W. 238, 242, writ refused. That case involved an action for libel because it was claimed that a defamatory document was filed with the State Comptroller. The record reveals that perhaps two petitions were circulated in one or more communities seeking signatures, remonstrating against a renewal of a liquor dealer's license, in the event he should subsequently request it. From our study of what was said by the court, we fail to see how it can be construed to support plaintiff's contention that the statement in the instant case was not privileged. The same rule is announced in that case as that herein asserted by us. Relating to absolute privileged communications, this was said: "There are two classes of privileged occasions or communications, the first absolute privilege, and the second qualified privilege. In the former class it is considered in the interest of the public welfare that all persons should be permitted to utter their sentiments and speak their thoughts freely and fearlessly upon all questions and subjects, and no action for words so spoken or written can be sustained, although falsely made with express malice. This class of privileged matter is founded absolutely on public policy, and the question of malice cuts no figure in connection with it."

The court goes on to specify conditions under which such publications are absolutely privileged, and among them is that of judicial proceedings. To read that opinion is to see also that it was decided upon a record which showed that the publication of the offending instrument did not depend alone upon its filing with the Comptroller, but because it was exhibited to numerous persons in the communities in which it was circulated. The discussion by the court of absolutely privileged communications was timely, because the defendants were contending that the filing with the Comptroller rendered the defamatory petition or document absolutely privileged.

■ The motion non obstante veredicto prayed that the court disregard the special verdict finding that the statement was neither absolutely nor qualifiedly privileged because they were questions of law and not of fact. The contention is correct. Express Publishing Co. v. Wilkins, Tex. Civ.App., 218 S.W. 614; Wick v. Express Publishing Co., Tex.Civ.App., 75 S.W.2d 478. The motion likewise asked that the finding of malice be disregarded for lack of evidence to support it. As above indicated, since the statement was absolutely privileged, the question of malice was immaterial. At any rate, we find nothing in the record to support the jury verdict on the point, even if it was necessary to establish it as a fact.

■ We hold that the Board of Insurance Commissioners is an arm of the government, with power and authority to see that the insurance laws of the State are kept and obeyed. In the performance of those duties, it is empowered to summon witnesses, and require them to testify under oath concerning matters pertaining to violations of the insurance law; to act upon the information acquired by it and to

enter judgments and decrees thereon; that it possesses quasi judicial powers and that information furnished to it upon its request, in matters within its jurisdiction, is absolutely privileged, and that the falsity or malice which prompted the written or oral information does not alter or affect the privilege.

After the testimony was all in, defendant requested the court to give a peremptory instruction in its favor. The request was refused and after verdict, defendant filed its motion for judgment non obstante veredicto. Having overruled the motion for an instructed verdict, the court should have sustained the motion for judgment notwithstanding the verdict.

For the reasons stated, the judgment of the trial court is reversed and judgment is entered for the defendant. Reversed and rendered.