C. R. REAGAN V. GUARDIAN LIFE INSURANCE COMPANY.

No. 7945. Decided December 9, 1942.
(166 S. W., 2d Series, 909.)

*W. A. Hawkins, Clark, Craik, Burns & Weddell,* all of Fort Worth, for petitioner.

It was error for the Court of Civil Appeals to hold that the filing of the libelous statement by respondent with the Board of Insurance Commission, as absolutely privileged as a matter of law, irrespective of malice or bad faith, and could not form the basis for an action for damages by the petitioner. Hoar v. Wood, 44 Mass. (3 Metc) 193; Missouri, K. & T. Ry. Co. v. Shannon, 100 Texas 379, 100 S. W. 138, 10 L. R. A. (N. S.) 681; Newell Slander & Libel, sec. 550.

*Chrestman, O. D. Brundige, Fountain, Elliott & Bateman* and *J. Alex Blakeley,* all of Dallas, for respondent.

In the absence of any evidence of malice, and in the light of petitioner's practically conceding that the publication was qualified privileged, there existed no grounds for a cause of action for libel. National Standard v. Bullington, 89 S. W. (2d) 491; Vacicek v. Trojack, 226 S. W. 505; 27 Texas Jur. 649.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This is a libel action. It was filed in the District Court of Tarrant County, Texas, by C. R. Reagan against the Guardian Life Insurance Company, a corporation. Trial in the district court resulted in a judgment for Reagan against the Insurance Company for $2,500.00. The jury found actual damages for Reagan in the sum of $10,000.00, but the trial court required a remittitur of $7,500.00. The remittitur was filed, and judgment was entered for $2,500.00. On appeal to the Court of Civil Appeals at Fort Worth this judgment was reversed and judgment rendered for the Insurance Company. 155 S. W. (2d) 950. Reagan brings error. We will hereinafter refer to Reagan as plaintiff, and to the Guardian Life Insurance Company as defendant.

Plaintiff's petition alleges that the defendant circulated a libelous statement, by filing with the Board of Insurance Commissioners of this State the following written statement, purporting to have been signed by one Florence Aquilar:

"Fort Worth, Texas, Sept. 16-38

"To Whom It May Concrn:

"On Thursday, Sept. 15 about 3 P. M., C. R. Reagan, who used to collect our insurance with the Guardian Life Ins. Co. several years ago, came to my house and told me he came to collect for our insurance. He said that he had left Mr. R. L. Brewer, (our present collector for the Guardian Life Ins. Co.) at the office but that he was here to collect for the Guardian Life Ins. Co.

"I told him he would have to come when my husband was home, and he said he would come back at 5:30. He has not returned.

"I have stated the truth and have done so of my own free will.

her<br>
(Signed) Florence (x) Aquilar<br>
mark

"Witness:

  "G. J. Nelligan      210 E. First St., Fort Worth."

  "Roy L. Brewer.

Plaintiff's petition alleges that the above written statement was never signed by Florence Aquilar, but was an is a pure forgery. It is also alleged that Florence Aquilar not only did not sign the above statement, but that she did not authorize it to be signed for her. Plaintiff contends that the defendant circulated the above-quoted written statement by one of its agents filing it with the Board of Insurance Commissioners. It is alleged that the Insurance Company knew the statements made in the instrument were false, and knew that it was not signed by Florence Aquilar. The petition alleges damages, actual and exemplary.

The defendant answered by general demurrer and numerous special exceptions, general denial, and several special answers. We deem it only necessary to say that the defendant, both by demurrer and by spcial answer, pleaded that the act of its

agent in filing the above instrument with the Board of Insurance Commissioners was absolutely privileged.

The evidence shows that the plaintiff had been employed by the defendant as a soliciting and collecting agent at Fort Worth, but that such employment had fully terminated shortly before the time the events here involved transpired.

R. L. Brewer, who was a soliciting and collecting agent for the defendant at Fort Worth, testified that on September 15, 1938, he went to Florence Aquilar's house in Fort Worth to collect a life insurance premium for the defendant. Brewer testified that on this occasion Florence Aquilar told him that the plaintiff had just been to her house, trying to collect the insurance premium due the defendant, but that she did not pay it to him. The next morning, September 16, 1938, Brewer returned to Florence Aquilar's house, accompanied by one G. J. Nelligan. Nelligan was an agent of the defendant at Fort Worth. We are not fully apprised as to what Nelligan's authority or duties were. It is shown that he acted as the district manager of defendant's Fort Worth office. We judge from the evidence that he had some control over the defendant's soliciting and collecting agents in Tarrant County. While at Florence Aquilar's house, the written instrument above set out was written by Nelligan, including the signature. Brewer and Nelligan both testified that the instrument was read over to Florence Aquilar, and that she signed it by making her mark, as appears from the instrument. Florence Aquilar denied ever having signed the instrument, and further denied that she had ever made any statement to either Nelligan or Brewer, to the effect that the plaintiff had been to her house, attempting to collect any money due the defendant company, after he had ceased to be its agent.

After the above instrument was written, it was mailed to the defendant at its home office in Dallas, Texas. For the purposes of this opinion we assume that Nelligan mailed it. When the instrument reached the home office, it came into the possession of Walter E. Rose. Rose was then employed by the defendant, at its home office at Dallas, as its agency director. His duties were to develop defendant's agency department. The agency department had charge of the sale of life insurance, the collection of premiums, and the care of such details as might come up. After the above instrument came into his possession, Rose carried it to Austin, and delivered it to the Board of Insurance Commissioners. At the time the instrument

was filed with the Board of Insurance Commissionrs, plaintiff was employed by another company. We assume for the purposes of this opinion that the filing of the instrument with the Board caused plaintiff to lose his employment, and caused him damages in the sum awarded by the trial court.

The case was submitted to a jury on special issues in the district court. In response to such issues the jury in effect found:

(1) That Florence Aquilar did not make the statement to Mr. Nelligan set forth in the written statement above.

(2) That plaintiff suffered actual damages in the sum of $10,000.00, which damages directly flowed from the publication of the above statement.

(3) That Florence Aquilar did not sign the statement above mentioned, by placing her mark thereon.

(4) That the filing of the statement set forth above with the Board of Insurance Commissioners was actuated by malice towards the plaintiff.

(5) That the filing of the statement above mentioned with the Board of Insurance Commissioners was not privileged.

(6) That the filing of the statement above set forth with the Board of Insurance Commissioners was not conditionally privileged.

There is evidence in this record showing that Florence Aquilar did not make the statement with reference to plaintiff contained in the above-quoted instrument, either orally or in writing. In this connection, there is evidence to show that she did not sign such instrument, either by writing her name thereon or by making her mark. There is also evidence to the contrary. From the verdict of the jury we must conclude that it was a pure forgery. We must further conclude that G. J. Nelligan and R. L. Brewer knew that it was a forgery. So far as is pointed out to us, no evidence was offered before the jury showing, or tending to show, that W. E. Rose, who filed the above statement with the Board of Insurance Commissioners, had any actual knowledge that it was forged, or that he had any reason to suspicion such fact. Of course, the findings of the jury that the instrument was not privileged or conditionally privileged were findings on pure questions of law. They are, therefore, of no effect.

As shown by the opinion of the Court of Civil Appeals, plaintiff contends that he was libeled by the act of the defendant's agent in circulating the above forged and untrue instrument. It is contended that the instrument was circulated by defendant when Rose, its agent, filed it with the Board of Insurance Commissioners.

The defendant contends that the filing of the above instrument with the Board of Insurance Commissioners was an act absolutely privileged, and therefore no action thereon in damages will lie against it, whether such instrument be real or forged, true or false. The defendant further contends that the plaintiff proved no case of libel against it in the making or circulation of the above instrument, because there is no evidence in this record showing, or tending to show, that any of its agents who created this instrument, or circulated it, or filed it with the Board of Insurance Commissioners, was acting within the scope of his authority with reference to any act of his connected with such instrument. The defendant makes other contentions, which we do not consider it necessary to mention.

We will not discuss or decide the question with reference to whether defendant's several agents acted within the scope of their respective authorities regarding this instrument. It is unnecessary for us to decide this question, as will later appear.

Before proceeding further we deem it expedient to state certain well-settled rules of law which we think are controlling of this case.

■ 1. An absolutely privileged communication is one for which, by reason of the occasion upon which it was made, no remedy exists in a civil action for libel or slander. Stated in another way, where there is an absolute privilege, no action in damages for language, oral or written, will lie; and this is true even though the language is false and uttered or published with express malice. 27. Tex. Jur. 643, sec. 33; Aransas Harbor Terminal Ry Co. v. Taber (Comm. Appls.), 235 S. W. 841; Cobb v. Garlington (Civ. Appls.), 193 S. W. 463; Connellee v. Blanton (Civ. Appls.), 163 S. W. 404; Allen v. Earnest (Civ. Appls.), 145 S. W. 1101; Wick v. Express Pub. Co. (Civ. Appls.), 75 S. W. (2d) 478.

■ 2. "Any communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged and cannot constitute the basis of a civil action in damages for slander or libel. The falsity of the statement or the malice of the utterer is immaterial, and the rule of nonliability prevails even though the statement was not relevant, pertinent and material to the issues involved in the case." 27 Tex. Jur. 645, sec. 34; Hott v. Yarbrough, 112 Texas 179, 245 S. W. 676; Runge v. Franklin, 72 Texas 585, 10 S. W. 721; 13 Am. St. Rep. 833; 3 L. R. A. 417; Tsesmelis v. Sinton State Bank (Comm. Appls.), 53 S. W. (2d) 461; Aransas Harbor Terminal Ry. Co. v. Taber (Comm. Appls.), 235 S. W. 841; Koehler v. Dubose (Civ. Appls.), 200 S. W. 238; Baten v. Houston Oil Co. (Civ. Appls.), 217 S. W. 394.

■ 3. The rule that communications uttered or published in the course of a judicial proceeding are absolutely privileged, applies to proceedings before executive officers, and boards and commissions which exercise quasi-judicial powers. Aransas Harbor Terminal Ry. Co. v. Taber (Comm. Appls.), 235 S. W. 841; Independent Life Ins. Co. v. Rodgers, 165 Tenn. 447, 55 S. W. (2d) 767.

In Aransas Harbor Terminal Ry. Co. v. Taber, supra, the court had before it a case wherein a letter was written to and received by the Texas Railroad Commission. The letter contained matter which was legally libelous, unless it was privileged. It concerned a matter which the Railroad Commission had jurisdiction to investigate. The opinion reviews the statutes of this State which confer on the Railroad Commission power to conduct investigatons and hearings touching certain matters involving railroads, and holds that such statutes constitute the Railroad Commission a quasi-judicial body. The opinion then holds that communications made to such a body stand on the same footing as regards libel as do communications made in a court of justice. Simply stated, the opinion holds that a communication to a quasi-judicial body is absolutely privileged.

Section 1 of Article 5068b, Vernon's Civil Statutes, provides for the licensing, among others, of life insurance agents. The licenses are issued by the Board of Insurance Commissioners, and the statutes clothe the Board with power to determine if the applicant for license is of good character and reputation.

Of course, the very power to make such determination carries with it the power to make all necessary investigation.

Section 4 of the article above mentioned makes it the duty of the Board of Insurance Commissioners to make diligent inquiry into th fitness of agents to continue as such, and to cancel a license once issued, or to refuse the application for a new license of any person found not to be of good character or reputation, or who shall wilfully violate any of the provisions of the Act of which this article is a part. This statute provides that before cancelling any license, the Board shall notify the licensee, etc., and shall hear what the licensee may offer touching the question of cancellation and the cause therefor. It is then provided that any licensee whose license is cancelled, or any applicant to whom a license is refused, may have redress in the courts as in other civil suits.

Section 5 of the above article provides that no person shall be authorized to engage in business as the agent of any life insurance company until he has procured a license from the Board of Insurance Commissioners; and that no company shall appoint any person to act as its agent unless such person shall first have obtained a license from the Board.

■ It is clear that the above statutes constitute the Board of Insurance Commissioners a quasi-judicial body, with reference to the licensing of life insurance agents and with reference to the forfeiting of such licenses when once issued, for improper or unlawful conduct on the part of such agents. Clearly, these statutes authorize the Board of Insurance Commissioners to conduct investigations and make fact findings. Furthermore, these statutes clearly give the members of the general public the right to make complaint to the Board of Insurance Commissioners, and the right to communicate with such Board touching the matters under consideration, just as such persons would have the right to communicate with a court.

■ It follows from what we have said that, when the agent of defendant filed this instrument with the Board of Insurance Commissioners he committed an act for which the law provides no redress in damages for this plaintiff. This is true whether the instrument is true or false, real or forged. It is true that a forged instrument can confer no rights; but that fact can give no aid to this plaintiff. The rule of privilege as applied to

absolutely privileged communications is not founded on the theory that the communications furnished any defense, but on the fact that the law allows absolute privilege or immunity on account of the occasion upon which the communication is made. It is the occasion, not the communication, which creates or furnishes the privilege. The rule is one of public policy. It is founded on the theory that the good it accomplishes in protecting the rights of the general public outweighs any wrong or injury which may result to a particular individual. DeArnaud v. Ainsworth, 24 App. Cas., D. C. 167, 5 L. A. A. (N. S.) 163.

The views we have expressed supra are in full accord with the views expressed by the Court of Civil Appeals. It is therefore ordered that the judgment of the Court of Civil Appeals be affirmed.

Opinion delivered December 9, 1942.