

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

November 26, 1997

Mr. William Treacy
Executive Director
Texas State Board of Public Accountancy
333 Guadalupe, Tower III, Suite 900
Austin, Texas 78701-3900

Mr. Wayne Scott
Executive Director
Texas Department of Criminal Justice
P.O. Box 99
Huntsville, Texas 77342-0099

Opinion No. DM-457

Re: Whether state indemnification and defense in certain legal actions pursuant to chapter 104 of the Civil Practice and Remedies Code is available to a volunteer performing services for a state agency (RQ-905)

Dear Gentlemen:

Civil Practice and Remedies Code section 104.001 requires the state to indemnify those individuals listed in that section for damages, court costs, and attorney fees if the damages are premised on an act or omission that occurred during the individual's service to the state. Section 104.004 requires the state to defend those same individuals. Section 104.001 does not list volunteers. You both ask whether the state must indemnify and defend a volunteer[1] who provides services for your agency if a civil action is brought against him or her for an action performed in the course and scope of the voluntary services.[2] The Department of Criminal Justice inquires generally about volunteers who provide services for it,[3] while the Board of Public Accountancy asks about its constructive enforcement volunteers, who assist the board with investigations. Because volunteers are not among those individuals listed in section 104.001, we conclude that they are not entitled to indemnification from and legal representation by the state.

---

[1]*See* Gov't Code § 2109.004(a) (listing requirements to which state agencies that wish to establish a volunteer program must adhere).

[2]Attorney General Opinion DM-173 (1992) concludes that section 101.063 of the Human Resources Code accorded immunity from liability to volunteer ombudsmen in the Texas Department of Aging long-term care ombudsman program for the good-faith performance of their functions as volunteers, and Attorney General Opinion DM-206 (1993) concludes that this statute also applied to interns in the volunteer ombudsman program. These two opinions address a specific provision of the Human Resources Code adopted to comply with a federal requirement, and they do not address the question of immunity for volunteers in general.

[3]*See* Gov't Code § 501.009 (requiring Department of Criminal Justice to encourage volunteer organizations to provide various programs for inmates).

The executive director of the State Board of Public Accountancy also asks whether a constructive enforcement volunteer may claim an absolute or qualified privilege if the volunteer is sued for defamation for his or her official work. We conclude that, in appropriate circumstances, the volunteer may claim one or the other.

We will consider first your questions about the extent of Civil Practice and Remedies Code chapter 104. Section 104.001 of that chapter requires the state to indemnify certain individuals for damages, court costs, and attorney fees:

> In a cause of action based on conduct described in Section 104.002, the state shall indemnify the following persons, *without regard to whether the persons performed their services for compensation*, for actual damages, court costs, and attorney's fees adjudged against:
>
> (1) an employee, a member of the governing board, or any other officer of a state agency, institution, or department;
>
> (2) a former employee, former member of the governing board, or any other former officer of a state agency, institution, or department who was an employee or officer when the act or omission . . . occurred;
>
> (3) a physician or psychiatrist . . . who was performing services under a contract with any state agency, institution, or department or a racing official performing services under a contract with the Texas Racing Commission when the act or omission . . . occurred;
>
> (4) a person serving on the governing board of a foundation, corporation, or association at the request and on behalf of an institution of higher education, . . . , not including a public junior college;
>
> (5) a state contractor who signed a waste manifest as required by a state contract; or
>
> (6) the estate of a person listed in this section. [Emphasis added.]

Section 104.002 limits indemnification to damages based on an action or omission committed in the course of the individual's service to the state, with certain qualifications irrelevant here.[4] Any public

---

[4]An appropriation to pay a claim under Civil Practice and Remedies Code chapter 104 is to be made from otherwise unappropriated amounts in a special fund or an account that may be appropriated to the affected state agency, to the extent that funds are available. *Id.* §§ 109.002(b), .003, .007 (excepting certain claims from chapter 109). If funds are unavailable, the appropriation may be made from the general revenue fund. *Id.* § 109.003. The comptroller will

(continued...)

servant who is entitled to indemnification under sections 104.001 and 104.002 similarly is entitled to be defended by the attorney general.[5]

To conclude that a volunteer is entitled to indemnification under section 104.001, we must interpret the section in one of two ways: either the list of positions numbered (1) through (6) is exemplary and not exclusive, or one of the listed positions includes volunteers. Because you ask about volunteers whose service fits under none of the listed categories except perhaps employee, we will consider only whether the term "employee" in section 104.001(1) encompasses volunteers.[6] We believe the section's plain language precludes either conclusion. Because we find the language clear, we need not rely on legislative history to determine what the legislature intended the section to mean.[7]

We first conclude that section 104.001 provides indemnification to only those individuals explicitly listed. A statute that creates an entitlement and designates the individuals who may claim the entitlement should be construed restrictively to infer that any individual not expressly described is excluded[8] unless the statute clearly states the contrary.[9] Section 104.001 contains no language clearly stating the contrary, nor does it imply that the class of positions entitled to indemnification is broader than those positions specifically listed. The section does not, for example, require the state to indemnify those public servants *including* those listed. Similarly, the section does not suggest that the listed positions are described as an example. Nor does the list establish a seventh, open-ended category indemnifying, for example, *any other public servant*.

Second, we do not believe the term "employee" includes volunteers, even though the section refers to individuals who are not compensated for their service to the state. This office refused in

---

[4](...continued)
reduce the appropriation for the state agency in an amount not to exceed $5,000 per claim or five percent of the agency's appropriation for that fiscal year for all claims. *Id.* § 109.004.

[5]*Id.* § 104.004(a).

[6]We do not consider in this opinion whether a state employee is entitled to indemnification and representation for an act or omission committed in the course of volunteer work.

[7]*See Boykin v. State*, 818 S.W.2d 782, 785-86 n.4 (Tex. Crim. App. 1991) (explaining that, despite Government Code's invitation to examine legislative history regardless of statute's clarity, court generally should decline to do so where language of statute in question is unambiguous); *Lumbermen's Underwriters v. State Bd. of Ins.*, 502 S.W.2d 217, 219 (Tex. Civ. App.--Austin 1973, writ ref'd n.r.e.) (citing 53 TEX. JUR. 2D *Statutes* § 125, at 182 n.17) (stating that, when legislature plainly has expressed its intent in statute's language, intent must be effectuated without attempting to construe or interpret law).

[8]*See Bidelspach v. State*, 840 S.W.2d 516, 518 (Tex. App.--Dallas 1992), *writ dism'd*, 850 S.W.2d 183 (Tex. Crim. App. 1993) (per curiam); 2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 47.23 (5th ed. 1992).

[9]*See* 2A SINGER, *supra* note 8, § 47.23.

Attorney General Opinion DM-409 to construe Health and Safety Code section 777.007, which requires the state to indemnify under Civil Practice and Remedies Code chapter 104 "an employee" of a regional poison control center, to require the state to indemnify a regional-poison-control-center volunteer.[10] In that opinion, we distinguished an employee from a volunteer on two bases: employer control and an express or implied contract for compensation.[11] An employer has control over an employee, but little over a volunteer.[12] In addition, an employee has an express or implied contract for compensation with the employer, while a volunteer has no such contract.[13] We believe the same rationale applies here.

Our construction of section 104.001 does not render the phrase "without regard to whether the persons performed their services for compensation" meaningless, although our conclusion necessitates a finding that an employee cannot be uncompensated. In our opinion, the phrase refers, at the least, to board members, officers, and former board members whom the state must indemnify. We understand from one of the briefs we received on this issue that individuals serving as board members and officers generally are not compensated for their services, and evidently this fact caused confusion as to whether an individual must be compensated to be entitled to indemnification and defense. The amendment thus rectifies this incongruity and "clearly indicates that board members and former board members are entitled to indemnification, . . . whether or not they perform their services for monetary compensation."[14]

Finally, with respect to your joint question, because a volunteer is not entitled to indemnification from the state under section 104.001, a volunteer is likewise not entitled to the attorney general's defense under section 104.004.

We turn now to the additional questions posed by the executive director of the State Board of Public Accountancy regarding the board's constructive enforcement volunteers. Under the board's direction, constructive enforcement volunteers are asked to do various investigative tasks including:

(1) on-site investigations;

---

[10]Attorney General Opinion DM-409 (1996) at 6-7.

[11]See id. at 4-6.

[12]See id. at 5 (citing Haavistola v. Community Fire Co., 812 F. Supp. 1379, 1386 (D.C. Md.), rev'd on other grounds, 6 F.3d 211 (4th Cir. 1993)).

[13]Id. at 5-6.

[14]Letter from Delmar Cain, General Counsel, The Texas A&M University System, to Sarah Shirley, Chair, Attorney General Opinion Committee (Oct. 23, 1996) (on file with the Opinion Committee, Office of the Attorney General).

        (a) taking photographs;

        (b) obtaining statements;

        (c) gathering evidence such as letterhead or business cards;

    (2) locating witnesses;

    (3) making telephone calls to verify compliance with the Act, the Rules and Board Orders;

    (4) testifying at administrative hearings;

    (5) reviewing continuing professional education sponsors' courses; and

    (6) carrying out other investigative tasks, as needed.

The executive director inquires whether an absolute privilege against a suit for defamation would apply to its constructive enforcement volunteers. Chapter 73 of the Civil Practice and Remedies Code defines defamation as follows:

> A libel is a defamation expressed in written or other graphic form that tends to blacken the memory of the dead[15] or that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury. [Footnote added.]

There is an absolute privilege for communications in the due course of a judicial proceeding made by the judge, jurors, counsel, parties, or witnesses.[16] Such communications will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made.[17] The privilege attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits, and any of the pleadings or other papers in the

---

[15]Recovery may be had for defamation of the dead only upon proof of injury to the reputation of the person by or for whom the action is brought. *Renfro Drug Co. v. Lawson*, 160 S.W.2d 246, 250 (Tex. 1942).

[16]*James v. Brown*, 637 S.W.2d 914, 916-17 (Tex. 1982); *Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 912 (Tex. 1942).

[17]*James*, 637 S.W.2d at 916-17; *Reagan*, 166 S.W.2d at 912.

case.[18] The privilege barring defamation suits applies to proceedings before executive officers and boards and commissions that exercise quasi-judicial powers.[19]

Also subject to the absolute privilege are out-of-court communications made by attorneys preliminary to a judicial proceeding or in connection therewith, if the statements relate to a judicial proceeding in which the attorney is employed and are in furtherance of the representation.[20] In a suit for damages instituted by a woman who was involuntarily hospitalized upon the application of her son and daughter, the Texas Supreme Court held that reports by three psychiatrists to the probate judge in the mental health proceedings were absolutely privileged.[21] A letter by one of the psychiatrists to the attorney for the plaintiff's children was also within the privilege because it was written in contemplation of a judicial proceeding.[22]

Accordingly, we believe that the constructive enforcement volunteers would have an absolute privilege against a civil action for libel or slander for statements made as witnesses in a quasi-judicial proceeding before the State Board of Public Accountancy and for communications preliminary to a proposed proceeding in which the volunteer will testify, if the communication has some relation to the hearing.[23] Whether a preliminary communication is related to the proceeding is a question of law, to be determined by considering the entire communication in its context.[24]

---

[18]*James*, 637 S.W.2d at 916-17.

[19]*Reagan*, 166 S.W.2d at 912 (Board of Insurance Commissioners); *Putter v. Anderson*, 601 S.W.2d 73, 76 (Tex. Civ. App.--Dallas 1980, writ ref'd n.r.e.) (internal affairs division of city police department when investigating citizen's complaint about police officer); *see also Odeneal v. Wofford*, 668 S.W.2d 819, 820 (Tex. App.--Dallas 1984, writ ref'd n.r.e.) (State Bar Grievance Committee).

[20]*Russell v. Clark*, 620 S.W.2d 865, 869 (Tex. Civ. App.--Dallas 1981, writ ref'd n.r.e.); *see also Odeneal*, 668 S.W.2d at 820 (privilege applies to letter written by attorney who is subject to grievance proceeding). The question of the relationship of the defamatory matter to a judicial proceeding is a question of law, to be determined by the court by considering the entire communication in its context and extending the privilege to any statement that bears some relation to a judicial proceeding. *Russell*, 620 S.W.2d at 870.

[21]*James*, 637 S.W.2d at 916-17.

[22]*Id.* at 917. The *James* court described the scope of the privilege for matters written in contemplation of a judicial proceeding:

> A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding.

*Id.* (quoting from THE RESTATEMENT 2D OF TORTS § 588 (1981)).

[23]*Id.*

[24]*Russell*, 620 S.W.2d at 870.

You also ask whether a conditional or qualified privilege might be available to constructive enforcement volunteers in defamation suits. This privilege applies to bona fide communications, oral or written, made in good faith on any subject matter in which the author has an interest or with reference to which he has a duty to perform, to another person having a corresponding interest or duty.[25] It does not change the actionable quality of the words published, but merely rebuts the inference of malice that is imputed in the absence of privilege and makes a showing of falsity and actual malice essential to the right of recovery.[26] The communication of alleged wrongful acts to an official authorized to protect the public from such acts is protected by a qualified privilege.[27] In our opinion, a constructive enforcement volunteer acting at the direction of the State Board of Public Accountancy or of paid employees who supervise volunteers would have a sufficient interest in the work of the board to invoke this privilege for communications to the board or to employees that have a corresponding interest or duty with respect to the substance of the communication. Whether this privilege would apply in a particular situation must be decided in light of all the facts and circumstances.

We wish to emphasize that the privileges we have discussed apply only to utterances that are made the basis of a subsequent suit for libel or slander.[28] An action taken by a witness may be the basis of a civil suit on other grounds, even though it is the subject of the witness's testimony in a judicial or quasi-judicial proceeding.[29] Communicating investigative findings to the board and testifying at hearings are only two of many tasks that constructive enforcement volunteers might perform for the board. Causes of action other than an action for defamation might arise out of a volunteer's other activities on behalf of the board.[30]

---

[25]*Mayfield v. Gleichert*, 484 S.W.2d 619, 625 (Tex. Civ. App.--Tyler 1972, no writ).

[26]*Id.* at 626.

[27]*Zarate v. Cortinas*, 553 S.W.2d 652, 655 (Tex. Civ. App.--Corpus Christi 1977, no writ) (accusation filed with sheriff's office accusing deputy county clerk of unauthorized loan of county equipment).

[28]*Charter Med. Corp. v. Miller*, 605 S.W.2d 943, 953 (Tex. Civ. App.--Dallas 1980, writ ref'd n.r.e.).

[29]*James*, 637 S.W.2d at 917-18 (defamation action cannot be based on doctors' communication to court of diagnoses of plaintiff's mental condition, but diagnoses themselves may be actionable on other grounds, such as medical malpractice).

[30]We do not know the full extent of the services performed by constructive enforcement volunteers, because, as the executive director of the Board of Public Accountancy informs us, their service includes "carrying out other investigative tasks, as needed."

## S U M M A R Y

A person who serves a state agency as an uncompensated volunteer is not entitled to indemnification against actual damages, court costs, and attorney fees adjudged against him or her under the circumstances described in section 104.002 of the Civil Practice and Remedies Code. Likewise, a volunteer is not entitled to be defended by the attorney general in suits subject to chapter 104 of the same code.

Constructive enforcement volunteers who assist in investigations for the State Board of Public Accountancy would have an absolute privilege against a civil action for defamation for statements made as witnesses in a quasi-judicial proceeding before the board. They would have a conditional or qualified privilege against a defamation suit under appropriate circumstances. The conditional or qualified privilege applies to bona fide communications, oral or written, made in good faith on any subject matter in which the author has an interest or with reference to which he has a duty to perform, to another person having a corresponding interest or duty. The absolute and conditional privileges apply only to a defamation suit and not to other causes of action that might arise out of a volunteer's activities on behalf of the Board of Public Accountancy.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Susan Garrison and Kymberly K. Oltrogge
Assistant Attorneys General