Terrie F. JENEVEIN, Appellant,

v.

Lawrence J. FRIEDMAN, Appellee.

No. 05–02–01188–CV.

Court of Appeals of Texas,
Dallas.

Sept. 8, 2003.

Donald M. Hunt, Mullin Hoard Brown Langston Carr Hunt & Joy, L.L.P., Lubbock, for Appellant.

Braden W. Sparks, Braden W. Sparks, P.C., Dallas, for Appellee.

Before Justices JAMES, BRIDGES and MARTIN RICHTER.

## OPINION

Opinion by Justice BRIDGES.

Appellant Terrie Jenevein asserts the trial court erred in granting summary judgment resulting in dismissal of her defamation suit against appellee Lawrence J. Friedman. She asserts that the trial court erred in granting Friedman sum-

mary judgment based on the "litigation privilege," which is the privilege to make defamatory statements in the course of judicial proceedings. We reaffirm the principle that, for the litigation privilege to apply, the challenged defamatory statement must bear "some relation" to the subject matter of the underlying proceeding. We hold that the allegedly defamatory statement at issue bore some relation to the conspiracy-to-bribe count in the underlying judicial proceeding. We affirm.

## Facts

Terrie Jenevein is a lawyer and the wife of Robert Jenevein, who was judge of the Dallas County Court at Law Number Three during the time relevant to this suit. Mrs. Jenevein (Jenevein) sued Lawrence J. Friedman for libel based on a statement made in an amended petition filed by Friedman on behalf of his client, Universal Image, Inc. (Universal) in a separate lawsuit (the *Yahoo* suit) underlying this suit. Universal sued defendants Yahoo, Inc., Broadcast.com, Inc. (Broadcast), and Mark Cuban, among others, for breach of contract. The defendants were represented by Steven Stodghill and others. At all times relevant to the instant suit, Judge David Ray Gibson presided over the *Yahoo* suit, in County Court At Law Number One.

Early on in the *Yahoo* suit, on December 23, 1999, Judge Robert Jenevein, in the absence of the presiding judge, presided over a hearing on a temporary restraining order (TRO). Judge Jenevein dissolved the TRO that Friedman had obtained from a different visiting judge the previous day. The hearing became contentious. During the hearing, Friedman presented an oral motion to recuse Judge Jenevein and filed a written motion to recuse the judge several days later.[1]

The *Yahoo* suit became more and more contentious, and on July 28, 2000, Universal filed its fourth amended petition. It continued the breach of contract claims but also added two sections, entitled "The Corrupt Conspiracy to Bribe Gibson" and "Concealed Relationships," and alleged a conspiracy to bribe Judge Gibson. The amended petition alleges that, at an *ex parte* meeting at Stodghill's house, Gibson and Stodghill discussed Yahoo's Motion for Sanctions against Friedman. The petition alleges that Gibson solicited "financial support" for his next political campaign, stating that he needed to be "protected from adverse political ramifications" if he sanctioned Friedman. The petition further alleges that, at Gibson's request, Stodghill promised him a fundraising event at Mark Cuban's home. The petition goes on to allege that Stodghill promised to personally fund Gibson's campaign in exchange for the ruling against Friedman.

In a previous paragraph, the petition states, "On information and belief, Cuban regularly invited Stodghill, Gibson and Robert Jenevein, another county court judge to sporting events, including Dallas Stars and Mavericks games." The petition also alleges that Stodghill and Gibson had an attorney-client relationship with respect to a family law matter, which they failed to disclose to Universal. At the end of the paragraph alleging this wrongdoing is the statement about Jenevein, which is the subject of the instant suit:

1. In her supplemental response to Friedman's motion for summary judgment in the instant case, Jenevein included the record from the Texas State Bar's disciplinary proceeding brought against Friedman as a result of the challenged statement in the *Yahoo* pleading, among other things. That record includes the transcript of Judge Jenevein's December 23 hearing and Friedman's motion to recuse, which alleges that Judge Jenevein displayed bias when he accused Friedman or his client of lying to him.

On information, ancillary to this matter but relevant to issues of pattern and pervasiveness of the type of conduct being complained of, Gibson has in other cases exchanged rulings for sexual favors, has made frequent *ad litem* appointments to Judge Robert Jenevein's wife and to Beverly Whittley, a lawyer with his former firm, and with whom Gibson is alleged to have a more intimate relationship.

Jenevein states she did receive some *ad litem* appointments from Judge Gibson, but she reads the quoted statement as including her as one who exchanged sexual favors for *ad litem* appointments. She vigorously contends the statement, read as such, is false and defamatory. Friedman asserts that the statement is in no way an accusation that Jenevein exchanged sexual favors for *ad litem* appointments from Judge Gibson.

Friedman asserted the affirmative defense of privilege and moved for summary judgment, which the trial court granted, based on "the absolute immunity applicable to pleadings filed by an attorney in pending litigation." The trial court dismissed Jenevein's libel claim with prejudice, and she brought this appeal.

### Standard of Review

To prevail, defendants moving for summary judgment must expressly present and conclusively prove all essential elements of their defense as a matter of law; there can be no genuine issues of material fact. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984) (citing *City of Houston v. Clear Creek Basin Auth.,*

589 S.W.2d 671, 678 (Tex.1979)). In deciding whether there is a disputed material fact issue, we take all evidence favorable to the non-movant as true. *Id.* We indulge every reasonable inference from the evidence in favor of the non-movant and resolve any doubts in the non-movant's favor. *Id.*

### The Litigation Privilege and the Pertinence or "Some Relation" Test

 Jenevein argues that Friedman has not shown he is entitled to the litigation privilege because the allegedly defamatory statement [2] had no connection to the subject of the *Yahoo* suit. Friedman counters that Texas Supreme Court precedent negates a rule imposing a requirement that the allegedly defamatory statement be related to the litigation for the privilege to apply.

 "Any communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged and cannot constitute the basis of a civil action in damages for slander or libel." *Reagan v. Guardian Life Ins. Co.,* 140 Tex. 105, 111, 166 S.W.2d 909, 912 (Tex.1942) (citations omitted). "This privilege extends to any statement made by the judge, jurors, counsel, parties or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case." *James v. Brown,* 637 S.W.2d 914, 917–18 (Tex.1982). The law allows absolute privilege or immunity for a

---

**2.** Notably, we do not decide whether the statement was in fact defamatory, *i.e.,* whether it can be read to assert that Jenevein exchanged sexual favors for *ad litem* appointments. The law governing the privilege cloaks qualifying communications with the privilege even if the statement was false and

made with ill will. *Reagan v. Guardian Life Ins. Co.,* 140 Tex. 105, 111, 166 S.W.2d 909, 912 (Tex.1942) (if privilege applies, falsity or malice of utterer immaterial). Thus, in testing whether the privilege applies, we may assume for the sake of argument that the statement was defamatory.

communication because of the occasion in which it is made. *Reagan*, 140 Tex. at 113, 166 S.W.2d at 913. The rule is one of public policy "founded on the theory that the good it accomplishes in protecting the rights of the general public outweighs any wrong or injury which may result to a particular individual." *Id.* The competing interests underlying the litigation privilege or "judicial proceedings privilege" have been described as follows:

> Underlying [the] general doctrine of absolute immunity from liability in libel and slander for statements made in the course of a judicial proceeding is a policy decision by the courts that access to the judicial process, freedom to institute an action, or defend, or participate therein without fear of the burden of being sued for defamation is so vital and necessary to the integrity of our judicial system that it must be made paramount to the right of an individual to a legal remedy where he has been wronged thereby.

*Jones v. Trice*, 210 Tenn. 535, 360 S.W.2d 48, 51 (1962).

Our review of precedents on the litigation privilege reveals that the Texas Supreme Court has alluded to, but has not addressed, the exact issue presented here—whether the defamatory statement must be connected to the subject matter of the proceeding for the privilege to apply. Nonetheless, this Court has directly addressed this issue and has consistently required that the defamatory matter bear some relationship to the judicial proceeding to be protected by the privilege.

The case of *Runge v. Franklin*, 72 Tex. 585, 10 S.W. 721 (1889), concerned an underlying suit in which plaintiff-stockholders alleged a fraudulent scheme by the president and directors of a corporation to destroy the stockholders' interest. Runge, a director, subsequently sued the stockholders for libel. In examining whether the statements in the underlying suit were privileged, the court first explicitly noted that the statements "[did] not go outside the pertinent matters" in the suit. *Id.* at 588, 10 S.W. at 722–23. Nonetheless, the *Runge* court went on to examine a number of cases and appeared to adopt a rule applying the privilege even if the defamatory statement was "irrelevant to the matter in hand." *Id.*

In *Reagan*, the supreme court affirmed that the privilege applies to communications made not only to courts, but to bodies that exercise quasi-judicial powers, holding that a statement to the state insurance commissioners was privileged. The *Reagan* court broadly described the privilege: "The falsity of the statement or the malice of the utterer is immaterial, and the rule of nonliability prevails even though the statement was not relevant, pertinent and material to the issues involved in the case." *Reagan*, 140 Tex. at 111, 166 S.W.2d at 912. The Court cited as its first authority *Texas Jurisprudence*,[3] followed by a number of cases, including *Runge*.

The broad statements in *Runge* and *Reagan* notwithstanding, the parties do not cite, nor do we find, any cases in which the Texas Supreme Court reaches the issue and rejects a pertinence test. This Court, however, when reaching the issue,

---

**3.** Ironically, the current version of *Texas Jurisprudence* states the opposite rule as the one prevailing in Texas:

> In order for the absolute privilege that protects statements made by an attorney during the course of judicial proceedings to apply, the communication must bear some relationship to a pending or proposed judicial proceeding in which the attorney is employed. . . .

50 Tex. Jur. III *Libel and Slander* § 48 (West 2000) (citing *Thomas v. Bracey*, 940 S.W.2d 340 (Tex.App.-San Antonio 1997, no writ)).

has required that some relationship exist between the statement and the proceeding. *Frost v. De Bogory*, 291 S.W.2d 414 (Tex. Civ.App.-Dallas 1956, no writ). In *Frost*, we acknowledged the broad language in *Reagan* but did not find it controlling on the narrower issue whether the challenged statement must be pertinent to the proceeding. *Id.* at 417. We adopted the following language as the rule in this Court:

> "The matter to which the privilege does not extend must be *so palpably wanting in relation to the subject-matter of the controversy that no reasonable man can doubt its irrelevancy and impropriety.* In order that matter alleged in a pleading may be privileged, it need not be in every case material to the issues presented by the pleadings. It must, however, be legitimately related thereto, or *so pertinent to the subject of the controversy that it may become the subject of inquiry in the course of the trial.*"

*Id.* (emphasis added) (quoting *Taylor v. Iowa Park Gin Co.*, 199 S.W. 853, 855 (Tex.Civ.App.-Galveston 1917, no writ)).

Subsequently, this Court addressed a related issue, holding that the privilege can extend to statements made out of court so long as they bear some relation to the proceeding. *Russell v. Clark*, 620 S.W.2d 865, 868 (Tex.Civ.App.-Dallas 1981, writ ref'd n.r.e.). We held that "the privilege applies to any statement that bears some relation to an existing or proposed judicial proceeding," adding, "All doubt should be resolved in favor of its relevancy."[4] *Russell*, 620 S.W.2d at 870. In applying a "some relation" test, we relied on the Restatement of Torts' treatment of the privilege, as applicable to attorneys:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, *if it has some relation to the proceeding.*

RESTATEMENT (SECOND) OF TORTS § 586 (1977) (emphasis added). Applying that test, we held that a letter sent by the defendant's attorney to the plaintiff's investors bore a sufficient relationship to the proceeding because its apparent purpose was to obtain information that might be used as evidence. *Russell*, 620 S.W.2d at 870.

Thereafter, the supreme court applied an analogous Restatement section to the issue whether a witness's statements were privileged. *James*, 637 S.W.2d at 917–18. The doctor-witness had submitted two reports concerning the plaintiff's mental status: one to the probate judge in conjunction with a pending mental-health proceeding and the other to the children's attorney, for a contemplated guardianship proceeding. The *James* court quoted in full the Restatement section applying the privilege to witnesses (otherwise identical to section 586 applicable to attorneys). Without elaborating on the Restatement's application to the facts, the *James* court simply stated that the witness's report to the judge was absolutely privileged and that the letter to the attorney was similarly privileged because it was written in contemplation of a judicial proceeding.

Subsequently, this Court addressed the relationship issue directly in *Odeneal v. Wofford*, 668 S.W.2d 819 (Tex.App.-Dallas 1984, writ ref'd n.r.e.). After Mrs. Ode-

---

**4.** We also held that "the question of the relationship of the defamatory matter to a proposed or existing judicial proceeding is a question of law, to be determined by the court." *Russell*, 620 S.W.2d at 870.

neal sued one of Wofford's clients, she complained of Wofford's conduct and filed a grievance with the State Bar Grievance Committee. Wofford responded to the committee in letters criticizing Mrs. Odeneal and her husband, who had represented her in both the suit and the grievance complaint. The Odeneals subsequently sued Wofford for defamation based on his remarks to the grievance committee. Responding to the Odeneal's argument that Wofford's comments were unprivileged because "irrelevant," this Court stated,

> The standard is not "relevance" but a lesser standard: the statement must only bear "some relation to the proceeding," and all doubt should be resolved in favor of "some relation." Further, the standard is necessarily minimal so as to occasion no fear, by any witness, of retaliatory damage suits for defamation and thereby hamper the original purpose of the privilege to encourage testimony.

*Id.* at 820 (citing *Russell*, 620 S.W.2d at 869; *James*, 637 S.W.2d at 917; and *Runge*, 72 Tex. at 590, 10 S.W. at 724). Applying that standard, we concluded that Wofford's statement bore some relation to the grievance proceeding.

We are mindful that at least two of our sister courts have rejected our application of a "pertinence" or "some relation" test. The Fort Worth court of appeals, citing *Runge* and *Reagan*, rejected the relationship test, stating that "communication in the course of a judicial proceeding is absolutely privileged whether relevant or not." *Gaither v. Davis*, 582 S.W.2d 913, 913–14 (Tex.Civ.App.-Fort Worth 1979, writ dism'd) (concerning lay witness testimony). The First Court of Appeals in Houston has concluded that the broad statement in *Reagan* was a "deliberate adoption" of a rule of law for the guidance of the lower courts. *Butler v. Lilly*, 533 S.W.2d 130,

135 (Tex.Civ.App.-Houston [1st Dist.] 1976, writ dism'd). Notably, however, the *Butler* court began its discussion with a full quote of the Restatement, section 586, including the "some relation" language. *Id.* at 131–32. The issue was whether an attorney's comments in jury argument, which allegedly defamed a witness, were privileged. Despite the *Butler* court's purported adherence to the broad rule in *Reagan*, it nonetheless applied the relationship test from the Restatement, concluding that the lawyer's comments bore "some relation" to the proceeding. *Id.*

We part ways with *Butler*'s purported rejection of a pertinence test for several reasons. *Butler* was decided before the supreme court's approval of the Restatement's "some relation" language as cited in *James*. It is true that the *James* court did not need to explicitly apply the "some relation" test to the challenged statements by the doctor, as they were unquestionably related to the mental health and guardianship proceedings in the underlying case. Nonetheless, we think that the clear import of the Restatement language approved in *James* requires "some relation" between the defamatory statement and the subject matter of the proceeding. Although *James* concerned the Restatement's formulation for a witness's privilege and the instant case concerns an attorney's privilege, we think both Restatement sections are guided by the same underlying policy concerns.

■ Accordingly, we reaffirm the principle that, for the litigation privilege to apply, the allegedly defamatory statement must bear "some relation" to the proceeding. We note that the germane comment in the Restatement makes clear that the "some relation" test does not require that the defamatory statement meet technical relevance, materiality, or admissibility

standards. RESTATEMENT (SECOND) OF TORTS § 586 cmt. c.

### Application of the "Some Relation" Test

■ Jenevein contends there is no connection between the offending statement concerning her and either the contract claim or the conspiracy-to-bribe claim in the underlying litigation. She argues that when a party, lawyer, or witness is defamed in the course of a proceeding, the defamed party at least has the opportunity in that forum to challenge the defamatory assertion. Thus, she argues, because she is a defamed third party—and not a lawyer, witness, or party participating in the underlying suit—a direct connection to the underlying proceeding is required to trigger the privilege.

We addressed the third-party issue in *Odeneal.* In that case a witness allegedly defamed a third person who was not a party. We held that "even statements aimed at non-parties are absolutely privileged if they bear some relation to the proceeding." *Odeneal,* 668 S.W.2d at 820. This rule appears to follow the weight of authority. *See Trice,* 360 S.W.2d at 53 ("Tennessee is with the weight of authority in holding that it makes no difference that the alleged libel concerns a third party."); *Bailey v. Superior Court,* 130 Ariz. 366, 636 P.2d 144, 146 (Ct.App.1981) (collecting cases) (defamatory statements can be about stranger to proceeding provided they are related to proceeding).

We examine the relationship of the allegedly defamatory statement in the context in which it appeared, the count alleging the conspiracy to bribe.[5] *See Russell,*

620 S.W.2d at 870 (court must consider entire communication in its context). On behalf of his client, Friedman asserted the conspiracy-to-bribe claim as a federal claim alleging a conspiracy to deprive his client of his civil rights. 42 U.S.C. § 1983 (1994). The petition alleges that Gibson solicited campaign funding in exchange for a ruling sanctioning Friedman. A key inquiry in a conspiracy case under § 1983 is whether the private party was a willful participant in the corrupt conspiracy. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). That inquiry, in turn, requires a showing that the alleged co-conspirators had a meeting of the minds, and thus a "mutual understanding" directing themselves toward unlawful action. *Id.* at 157, 90 S.Ct. 1598.

Friedman alleged a conspiracy to bribe Judge Gibson, with the so-called "campaign contribution" intended as an improper quid pro quo for a ruling sanctioning Friedman. The statement concerning Jenevein could bear some relation to the *Yahoo* proceeding. The testimony concerning Gibson's alleged judicial improprieties in granting *ad litem* appointments could be introduced to establish intent. Resolving all doubts in favor of showing a relationship, we conclude that there was some relation between the alleged bribery scheme and the statement concerning the judge's allegedly improper exchanges for judicial favors. *See Russell,* 620 S.W.2d at 870. Having articulated a plausible evidentiary avenue by which the offending statement might become the subject of inquiry, we nonetheless reiterate that the principles governing application of the

---

5. We realize, based on the record before us, that Friedman attempted to omit this count in a subsequent pleading. We test the statement for the requisite relationship to the proceeding, however, in the context in which it was raised, in a pleading alleging a conspiracy to bribe. If the claim is frivolous, the attorney remains subject to sanctions and disciplinary proceedings.

"some relation" test explicitly do not require technical relevance, materiality, or admissibility.[6]

### Jenevein's Second and Third Issues

In her second issue, Jenevein complains that she is unable adequately to prepare her defense that she has raised a fact question. She asserts that the trial court's order declaring parts of her affidavit inadmissible is too unclear for her to ascertain what parts remain in evidence. We need not reach this issue, because we resolve this case on our determination of the threshold legal question whether the challenged statement bore "some relation" to the proceeding. *Russell*, 620 S.W.2d at 870. Even if the factual assertions in Ms. Jenevein's affidavit were admitted in their entirety, and even if they raised a fact question on the elements of defamation, those assertions would not affect our legal determination that Friedman's statement bore some relation to the underlying proceeding and was thus privileged. Therefore, we need not reach Jenevein's second issue.

In her third issue, Jenevein makes a general complaint that the trial court's granting summary judgment was in error, pursuant to *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970). Because we resolve the first issue, the threshold legal issue, in Friedman's favor, we do not reach Jenevein's general complaint that summary judgment was in error.

Accordingly, we affirm the trial court's summary judgment.

---

6. Notably, under the disciplinary rules applicable to counsel, lawyers must reasonably believe the challenged statement is relevant or supportable by admissible evidence, or will lead to such:

A lawyer shall not:
(c) ... in representing a client before a tribunal:
(2) state or allude to any matter that the lawyer does not reasonably believe is relevant to such proceeding or that will not be supported by admissible evidence ...

...
(4) ask any question intended to degrade a witness or other person except where the lawyer reasonably believes that the question will lead to relevant and admissible evidence....

TEX. DISCIPLINARY R. PROF'L CONDUCT 3.04, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998) (TEX STATE BAR R. art. X, § 9).