**Jack Tyrel AIRHART Plaintiff,**

**v.**

**UNION PACIFIC RAILROAD CO. and Joseph K. Bearden Defendants**

**No. CIV.A. G–04–112.**

United States District Court, S.D. Texas, Galveston Division.

Aug. 25, 2004.

Russell Gladwin Burwell, III, Burwell Burwell et al, Texas City, TX, Robert M Tramuto, Jones & Granger, Houston, TX, for plaintiff.

Benton R Bond, Union Pacific RR Co., Houston, TX, for defendants.

*ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S LIBEL AND SLANDER CLAIM*

KENT, District Judge.

Jack Tyrel Airhart ("Airhart" or "Plaintiff") brings this suit against his former employer, the Union Pacific Railroad Company ("Union Pacific") and one of its superintendents, Joseph Beardon. Plaintiff alleges a personal injury claim under the Federal Employees Liability Act ("FELA") as well as state-law claims for intentional infliction of emotional distress, libel, and slander. Now before the Court is Defendants' Motion to Dismiss Plaintiff's Libel and Slander Claim. For the reasons articulated below, Defendants' Motion is **GRANTED**. Accordingly, Plaintiff's claims for libel and slander are hereby **DISMISSED WITH PREJUDICE**.

## I. BACKGROUND

Plaintiff was formerly employed as an engineer for Union Pacific. While working on October 21, 2003, Plaintiff allegedly suffered a serious back and neck injury when the train he was operating was struck from behind by a remote-control operated train. Plaintiff claims that although the train was stopped and the brakes were set at the time of the accident, the collision was significant enough to move the train 18 feet. After the accident, Plaintiff reported back discomfort directly to his supervisor and on an accident report that was completed on October 23, 2003. Plaintiff consulted with his family physician and underwent physical therapy for "muscle strain/sprain of his back and neck." Plaintiff claims that his physician gave him a recommendation to stop working and prescribed medication for his injury. Plaintiff subsequently reported the diagnoses of his physician to his employer.

On November 30, 2003, Union Pacific notified Plaintiff through a letter from Superintendent Beardon that he might be subject to discipline as a result of alleged dishonesty for furnishing false or exaggerated information concerning the details of his injury. In accordance with the applicable collective bargaining agreement and the Railway Labor Act, Union Pacific conducted a hearing on the charge on December 4, 2003. *See* 45 U.S.C. § 151 *et seq.* Based on the testimony given at the hearing, Beardon concluded that Plaintiff had violated Rule 1.6 of the Union Pacific General Code of Operating Rules by being dishonest in the reporting of his injury. Beardon advised Plaintiff and his Union representation of his conclusion by letter dated December 12, 2003. Plaintiff's employment was terminated in the same letter.

The statements made in that letter form the basis for Plaintiff's libel and slander

claims. He alleges that the statements made in the letter were made "with knowledge that they were false or with substantial grounds for knowing that they might be false or with reckless disregard as to whether they were true or false." The publication of these statements to Plaintiff and his Union Representatives allegedly caused the Plaintiff to lose his job, suffer injury to his reputation, and experience financial loss.

## II. LEGAL STANDARD

Defendants seek dismissal of Plaintiff's libel and slander claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a claim upon which relief can be granted. *See* Fed. R.Civ.P. 12(b)(6). When considering a motion to dismiss for failure to state a claim, the Court accepts as true all well-pleaded allegations in the complaint and views them in the light most favorable to the plaintiff. *See Malina v. Gonzales,* 994 F.2d 1121, 1125 (5th Cir.1993). Such motions should be granted only when it appears without a doubt that a plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994).

## III. ANALYSIS

Defendants initially argue that Plaintiff's libel and slander claims are barred by both federal and state law. However, on the first page of their Reply Defendants state that they "are not asserting a preemption defense in this Motion." Since Defendants arguments under federal law relied primarily on cases concerned with preemption, the Court can only conclude that Defendants' Reply abandoned the federal-law defense asserted in their Motion. Wheth-

er this was Defendants' intention is of little consequence since the Motion can be decided based solely on state law. Accordingly, the Court confines itself to consideration of Defendants' state-law arguments.

■ Defendants argue that Texas privilege law bars Plaintiff's libel and slander claims. Under Texas law, "an absolute privilege extends to publications made in the course of judicial and quasi-judicial proceedings." *Lane v. Port Terminal R.R. Ass'n,* 821 S.W.2d 623, 625 (Tex. App.—Hous. [14th Dist.] 1991, writ denied); *see also James v. Brown,* 637 S.W.2d 914, 916 (Tex.1982) ("Communications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made."). "Quasi-judicial proceedings are those proceedings before executive officers, boards and commissions which have authority to hear and decide matters coming before them or redress grievances of which they take cognizance." *Lane,* 821 S.W.2d at 625. Defendants maintain that the hearing conducted on December 4th and the letter which followed were part of a quasi-judicial proceeding, so any statement made in the course thereof was absolutely privileged and cannot be the basis of a libel or slander claim. Plaintiff argues that the statements made were only entitled to a conditional or qualified privilege and that proof of actual malice would defeat the privilege.

Defendants rely primarily on the decision in *Lane* to support their argument of absolute privilege. In *Lane,* statements made in connection with a Special Board of Adjustment hearing held pursuant to the RLA were held to be subject to an absolute privilege. Lane was an employee of the Port Terminal Railroad ("PTR"). After the injury of a co-worker, Lane filed an accident report and gave statements re-

garding the accident to a claims manager and a senior railroad employee. The injured employee later filed a personal injury suit against PTR, and Lane's deposition was taken in the course of the litigation. When PTR received a copy of Lane's deposition testimony, they compared it to the statements and report obtained previously. Upon finding significant discrepancies, Lane was charged with rules violations pursuant to the Union Bargaining Agreement. A formal investigation was conducted, and Lane was discharged. Lane appealed his discharge, and his claim was set for adjudication before the National Railroad Labor Board, Special Board of Adjustment as provided by the RLA. The board denied Lane's claim. Lane then filed suit for libel and slander. The Court found that any comments made prior to the Board of Adjustment hearing were barred by limitations. The comments made at the hearing were not barred by limitations but were subject to an absolute privilege because the hearing was a quasi-judicial proceeding.

Plaintiff relies on *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640 (Tex. 1995), in arguing that the communications were only entitled to a conditional privilege. In *Randall's*, the Court determined that communications made by an employer in the course of an investigation of employee wrongdoing are entitled to a conditional privilege. In that case, Mary Johnson, a store manager, purchased several items from the store but forgot to pay for a wreath she was carrying. Johnson sued for defamation claiming that other managers published falsely that she had stolen a wreath from the store. In addition to finding that the comments made were actually true, the Court noted that they were qualifiedly privileged since they were made in the course of an investigation following a report of employee wrongdoing.

■ If *Lane* controls this case, the allegedly defamatory communications carry an absolute privilege, and "it is well established that an absolutely privileged communication is one for which no remedy exists in a civil action for libel and slander." *Lane*, 821 S.W.2d at 626; *see also Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 166 S.W.2d 909, 912 (1942). However, if *Randall's* is controlling and the communications are entitled merely to a qualified privilege, the privilege can be defeated by a showing of actual malice, and this case would not be appropriate for a dismissal for failure to state a claim. This Court finds that *Lane* is more analogous to this case, the communications are entitled to an absolute privilege, and Plaintiff cannot state a claim for defamation.

*Randall's* is clearly distinguishable from this case. In *Randall's*, no one even argued that the communications were entitled to an absolute privilege. There were no allegations that the informal investigation was a quasi-judicial proceeding. In fact, there was no proceeding, quasi-judicial or otherwise, in that case. Additionally, the *Randall's* case did not involve unions, collective bargaining agreements, or a federal statutory scheme. The extension of a qualified privilege to investigations of employee wrongdoing by the *Randall's* court does not apply to the hearing conducted in this case by Union Pacific. That the hearing was formally called an "Investigation" is of no moment. The character of the proceeding was fundamentally different from the investigation covered in *Randall's*. *Randall's* is applicable to this case in that it provides for at least a qualified privilege. It does not preclude the provision of an absolute privilege.

*Lane*, though more applicable, is not directly on point either. In *Lane*, the proceeding was actually before the Special Board of Adjustment, an arm of the gov-

ernment and a statutory creation. Here, the communications were made earlier in the process before the Railroad's own hearing panel. The pertinent question is whether the absolute privilege afforded to the Board of Adjustment hearing also applies to the hearing in this case. The Railway Labor Act was enacted "to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions" and "to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a. Carriers covered by the RLA are required to develop methods of dispute resolution "in order to avoid interruption to commerce or to the operation of the carrier." 45 U.S.C. § 152. In fulfilling this duty, carriers such as Union Pacific enter into collective bargaining agreements with the unions that represent their employees. Plaintiff's termination was pursuant to the policies required by the collective bargaining agreement promulgated under the RLA. "At least one court has indicated that publications made in the course of proceedings held pursuant to the National Railway Labor Act are subject to an absolute privilege." *Lane,* 821 S.W.2d at 625 (citing *Houston Belt & Terminal Ry. v. Wherry,* 548 S.W.2d 743, 748 (Tex.Civ. App.-Hous. [1st Dist.] 1976, writ ref'd n.r.e.)). The Court finds that the publications made in this case were in the course of proceedings held pursuant to the National Railway Labor Act and deserve the same privilege afforded to proceedings before the Board of Adjustment.

■ This result is required by the policy motivations that allow for privilege before the Board of Adjustment. "The purpose of extending an absolute privilege to statements arising in the course of judicial and quasi-judicial proceedings is to encourage full disclosure from witnesses and oth-er persons and to insure that the administration of justice may proceed unhampered by the fear of retaliatory suits for defamation." *Lane,* 821 S.W.2d at 626 (citing *Reagan,* 166 S.W.2d at 912). Allowing for an absolute privilege in an appeal before the Board of Adjustment and only a conditional one in the initial proceeding is both inconsistent and inefficient. The result would be to chill advocacy in the initial proceeding and wait for an appeal to fully prosecute and defend disputes. This is clearly contrary to the stated purpose of the RLA.

Since all of the allegedly defamatory comments are entitled to an absolute privilege, Plaintiff has no basis for a libel or slander claim. Accordingly, Defendants' Motion to Dismiss is **GRANTED,** and Plaintiff's libel and slander claims are **DISMISSED WITH PREJUDICE.** A Final Order will be issued in due course. All Parties are to bear their own taxable costs, expenses, and attorneys' fees incurred herein to date.

**IT IS SO ORDERED.**