**Opinion issued June 30, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00694-CV

_____

**DIOGU KALU DIOGU II, Appellant**

**V.**

**YAOWAPA  RATAN-APORN, Appellee**

**On Appeal from the 387th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 13-DCV-204732**

## MEMORANDUM OPINION

This is an appeal from a judgment entered following a bench trial.  We

affirm.

# TRIAL COURT PROCEEDINGS

Appellant Diogu Kalu Diogu II filed, in Fort Bend District Court, an "Original Petition to Annul Marriage, Fraud and Conspiracy; Application for Temporary Restraining Order, Temporary Injunction and Permanent Injunction." In that petition, Diogu asserted claims against both his wife, defendant Thitiphasr Charoentheerasak, and defendant/appellee Yaowapa Rattana Aporn. Diogu alleged that his marriage to Charoentheerasak was induced by fraud, and that Aporn conspired to aid Charoentheerasak in defrauding Diogu.

Diogu later nonsuited his claims against his wife, leaving only claims against Aporn. Aporn then filed a counterclaim against Diogu, alleging that he had wrongfully filed a lis pendens burdening her homestead and intentionally causing her emotional distress. Aporn sought a declaration that the lis pendens was improper, actual damages, sanctions, and attorneys' fees.

Several months later, Diogu voluntarily lifted his notice of lis pendens on Aporn's property and then nonsuited his claims against Aporn, leaving only Aporn's claims against Diogu pending. Those claims proceeded to trial.

## A. The Final Judgment

The May 12, 2014 Final Judgment recites that both parties participated in a bench trial, and it awards damages to Aporn:

> On April 23, 2014 the counter claim filed by YAOWAPA RATANA APORN against DIOGU KALU DIOGU II was called for

2

trial and evidence was presented. The trial was recessed and then recalled for trial on April 28, 2014 as ordered by the Court. Counter Plaintiff, YAOWAPA RATANA APORN, appeared with her counsel, Mario A. Martinez and announced ready for trial. Counter Defendant, DlOGU KALU DIOGU II, appeared as pro se party and attorney of record for himself, participated in the trial, and entered an appearance for all purposes. On April 28. 2014, all matters in controversy, legal and factual, against Counter Defendant, DIOGU KALU DIOGU II, were submitted to the Court for its determination. The Court heard the evidence and arguments of counsel and orally RENDERED judgment in favor of Counter Plaintiff, YAOWAPA RATANA APORN, on April 28, 2014. This written judgment memorializes that rendition.

On the claim of a violation of Texas Civil Practices and Remedies Code, Section 12.001, *et. seq.* the Court finds Counter Defendant, DIOGU KALU DIOGU II, in violation of this statute and assesses damages against him in the amount of Ten Thousand and 00/100 Dollars ($10,000.00) in favor of Counter Plaintiff, YAOWAPA RATANA APORN.

The Court further finds that Counter Defendant, DIOGU KALU DIOGU, II, acted with malice in violation of Texas Civil Practice and Remedies Code, Section 12.001, *et seq.* and therefore assesses punitive damages against him in the amount of Twenty Five Thousand and 00/100 Dollars ($25,000.00) in favor of Counter Plaintiff YAOWAPA RATANA APORN.

Counter Plaintiff, YAOWAPA RATANA APORN, is entitled to prejudgment interest on the damages awarded herein (excluding attorney's fees) of Thirty Five Thousand and 00/100 ($35,000.00), at the rate of 5.00% per annum, from April 22, 2013 through the date of judgment of April 28, 2014, in the sum of $4.79 per day for a total of One Thousand Seven Hundred Eighty Three and 56/100 ($1,783.56).

Counter Plaintiff, YAOWAPA RATANA APORN, is entitled to post-judgment interest on the total amount of the judgment and any prejudgment interest awarded hereinabove, at the rate of 5.00% per annum from the date this judgment is signed until paid.

Counter Plaintiff, YAOWAPA RATANA APORN, is further entitled to recover her reasonable and necessary attorney's fees against Counter Defendant, DIOGU KALU DIOGU II, in the sum of Thirteen Thousand Three Hundred and Two and 87/100 Dollars ($13,302.87). Counter Plaintiff, YAOWAPA RATANA APORN, is further entitled to the sum of Ten Thousand and 00/100 Dollars ($10,000.00) as attorney's fees and expenses against Counter Defendant, DIOGU KALU DIOGU II, if Counter Defendant appeals this cause to the Texas Court of Appeals and further entitled to the sum of Five Thousand and 00/100 Dollars ($5,000.00) as attorney's fees and expenses against Counter Defendant, DIOGU KALU DIOGU II, if Counter Defendant further appeals this cause to the Texas Supreme Court.

## B. Diogu's Motions for New Trial

On June 11, 2014, Diogu filed a Motion for New Trial, arguing that (1) the trial court failed to provide proper notice of the bench trial, (2) the issues in the trial were mooted by Diogu's voluntarily releasing the lis pendens before trial, (3) Aporn lacked standing to maintain her claims because she no longer owned the property that was the subject of the lis pendens, (4) the trial court deprived him of a jury trial, despite his timely demanding a jury trial and paying the fee, and (5) the trial court should not have entered judgment while Diogu's motion to reconsider the denial of his motion to recuse the trial judge was pending.

Alternatively, Diogu argued that he is entitled to a new trial because service of process on him was defective. In the further alternative, he contends that he had satisfied the requirements of *Craddock*. Specifically, he argues that he did not participate in the bench trial because he thought it might result in waiver of his

right to a jury trial, not because of conscious indifference. He also argued that his meritorious defense was demonstrated by his pleading that the lis pendens on Aporn's house had been extinguished before trial, rendering Aporn's claims against him moot. Finally, Diogu contended that Aporn would not incur delay or injury if a new trial were granted. In the further alternative, Diogu argued that a new trial was appropriate because Aporn committed fraud by failing to disclose at trial that she had sold the property that had been burdened by the lis pendens.

On July 17, 2014, the trial court denied Diogu's motion.

On August 11, 2014, Diogu filed a second Motion for New Trial complaining that (1) he was not able to properly present his evidence because witnesses were unavailable, (2) he was denied a fair hearing on sanctions by the court's failure to hold a telephonic hearing, and (3) the trial should have considered his motion for continuance. On that same day, Diogu filed a notice of appeal.

## THIS APPEAL

Diogu raises the following five issues on appeal:

1. "Did the district court err in holding a trial and rendering and signing a default judgment in favor of the Appellee contrary to *Riga v. Comm'n for Lawyer Discipline*, 224 S.W.3d 795, 797–98 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). *Hudson v. Texas Children's Hosp.*, 177 S.W.3d 232, 235–38 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Johnson v. Pumjani*, 56 S.W.3d 670, 672 (Tex. App.—Houston [14th Dist.] 2001, no pet.), *In re Lincoln*, 114 S.W.3d 724, 727 (Tex. App.—Austin 2003, orig. proceeding) and *Mann v. Denton County*, 2014 WL 5089189 (Tex. App.—Fort Worth, Oct. 09, 2014, pet. denied)

5

and Tex. R. Civ. P. 18a(c), when the trial Judge did nothing when a second motion to recuse/Motion for reconsideration that was pending before her court was twice brought to her attention?"

2. "Did the district court err, in granting the Final Judgment to the Appellee, contrary to *In re $475,001*, 96 S.W.3d 625, 627 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (*citing Peralta*, 485 U.S. at 86, 108 S. Ct. at 899-900) and *Mahand v. Delaney*, 60 S.W.3d 371, 374–75 (Tex. App.—Houston [1st Dist.] 2001, no pet.) when the Appellant was notified for the first time, when the Appellee's counsel, ordered by the court called the Appellant on April 23rd, 2014 at 09:30 AM and informed him that trial was set on n April 23rd, 2014 at 09:00 AM?"

3. "Did the district court err contrary to *Camarena v. Tex. Employment Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988); *Scurlock Permian Corp. v. Brazos County*, 869 S.W.2d 478, 487 (Tex. App.—Houston [1st Dist.] 1993, writ denied) and in holding a trial and rendering a default Judgment on a matter that the Court was aware that it lacked subject matter jurisdiction?"

4. "Did the district court err, contrary to *Gen. Motors Corp v. Gayle*, 951 S.W.2d 469, 477 (Tex. 1997) (orig. proceeding) in conducting a bench trial, when the trial Court knew that the Appellant timely made jury demand and the paid the jury fees?"

5. "Did the district court err contrary to 1-4 above when it denied Appellant's Motion for New Trial?"

Because Diogu failed to request that a reporter's record be prepared or make arrangements to pay for a reporter's record, we notified the parties that we would

6

"consider and decide those issues or points that do not require a reporter's record for a decision." TEX. R. APP. P. 37.3(c).[1]

## DIOGU'S MOTION TO RECUSE

On April 24, 2014, after the first day of trial was held on April 23, 2014, Diogu filed a Motion to Disqualify or Recuse Trial Court, arguing that the trial judge was rude to him, and that the judge had improper ex parte communications with Aporn the previous year. Diogu insisted that the judge was biased against him and that she should therefore be disqualified or recused.

The trial judge declined to recuse herself and, in compliance with Rule 18a(f)(B) of the Texas Rules of Civil Procedure, she signed an order that same day referring the case to an administrative judge to appoint a judge to hear the motion.

The next day, April 25, 2014, Diogu's motion was denied by a different judge by written order. That order stated that Diogu complaints were grounded in adverse rulings, which are not grounds for recusal, and that Diogu's motion did not satisfy the particulars required of a recusal motion.

Later that same day, Diogu filed a Motion for Reconsideration, arguing that the "Court misunderstood and mischaracterized the motion to recuse and/or

---

[1] Diogu was first given "notice and a reasonable opportunity to cure." TEX. R. APP. P. 37.3(c).

7

disqualify." There is no indication in the appellate record that this motion for reconsideration was ruled upon.

In his first issue, Diogu argues that his Motion for Reconsideration should have been interpreted to be a second motion for recusal that the trial judge was required to refer to the administrative judge. Alternatively, Diogu contends that, even if the motion was treated only as a request for reconsideration of the denial of his earlier motion, the trial court "should have immediately referred it to the Recusal Court because [the] first Order denying the Appellant's Motion to recuse/Disqualify was put on hold and suspended until the motion for reconsideration was decided." Diogu cites no authority for either proposition, and our research has not uncovered any.

When a motion to recuse is filed, Rule 18a provides the trial court only the options to (1) recuse, or (2) refer the motion to the presiding judge to decide the merits:

> (f) Duties of the Respondent Judge; Failure to Comply.
> (1)     Responding to the Motion. Regardless of whether the motion complies with this rule, the respondent judge, within three business days after the motion is filed, must either:
>> (A) sign and file with the clerk an order of recusal or disqualification; or
>> (B) sign and file with the clerk an order referring the motion to the regional presiding judge.
> (2)     Restrictions on Further Action.

(A) Motion Filed Before Evidence Offered at Trial. If a motion is filed before evidence has been offered at trial, the respondent judge must take no further action in the case until the motion has been decided, except for good cause stated in writing or on the record.

(B) Motion Filed After Evidence Offered at Trial. If a motion is filed after evidence has been offered at trial, the respondent judge may proceed, subject to stay by the regional presiding judge.

(3)    Failure to Comply. If the respondent judge fails to comply with a duty imposed by this rule, the movant may notify the regional presiding judge.

TEX. R. CIV. P. 18a(f).

Diogu's argument is that his April 25, 2014 filing, entitled "Motion for Reconsideration," should have been treated by the trial court as a second motion to recuse, triggering the trial court's duty to either recuse or refer the motion to the administrative judge. *See Blanchard v. Krueger*, 916 S.W.2d 15, 17 (Tex. App.—Houston [1st Dist.] 1995, no pet.) (holding that trial judge who declined to recuse "abused his discretion by refusing to forward the second motion to recuse to the presiding judge of the administrative judicial district"). We disagree, however, that the trial court erred by not treating the motion for reconsideration as a second motion to recuse.

The title of a pleading is not dispositive of its nature. Rather, "[w]e look to the substance of a plea for relief to determine the nature of the pleading, not merely at the form of title given to it." *State Bar of Texas v. Heard*, 603 S.W.2d 829, 833

9

(Tex. 1980) (citing TEX. R. CIV. P. 71). Reference to the substance of the relief requested in Diogu's Motion for Reconsideration, however, serves only to confirm that Diogu sought reconsideration of the denial of his first motion to recuse:

> WHEREFORE, PREMISE CONSIDERED, for the above stated reasons, the Court should reconsider its Order denying Diogu's motion disqualifying or recusing the trial court from further involvement in this case.
>
> FURTHERMORE, Movant prays that to preserve the integrity of our judicial system Honorable Judge Brenda G. Mullinix should disqualify herself immediately, Motion to Recuse/disqualify the Honorable Judge Brenda G. Mullinix, from further service in the above-entitled and numbered cause be granted, and for such other and further relief that may be awarded at law or in equity.

Accordingly, we conclude that the record does not support Diogu's claim that the trial court violated Rule 18a.

We likewise reject Diogu's argument that the trial court should have stayed the trial court proceedings after he filed a Motion for Reconsideration of the denial of his recusal motion. He reasons that "his first Order denying the Appellant's Motion to recuse/Disqualify was put on hold and suspended until the motion for reconsideration was decided." Nothing in rule 18a or the case law interpreting it supports Diogu's position that the trial court could not proceed with the ongoing trial while a Motion for Reconsideration was pending.

We overrule Diogu's first issue.

10

## LACK OF NOTICE

In his second issue, Diogu argues that the trial court's judgment is "voidable because there is no record showing that appellant was served with notice of the trial setting until 9:30 am on April 23, 2014 that was 30 minutes after the trial was intended to commence on the trial day." He contends that the lack of reasonable notice deprived him of due process, and that the absence of any proof of service of the trial notice conclusively establishes no notice and requires reversal of the trial court's "default judgment."[2]

The record reflects, and Diogu does not dispute, that he was notified on April 23, 2014 that the case was proceeding to trial. When he failed to show up for the 9:00 trial setting that day, the court reached out to contact him at 9:30, and then continued the trial until 1:00 that afternoon so that he could participate. Diogu pursued this appeal without a reporter's record, leaving us without any record of an alleged objection by Diogu about lack of adequate notice. He did not file a motion for continuance; instead, he appeared at 1:00 p.m. and participated in trial.

We need not determine whether Diogu received proper notice of the trial setting because his participating in the trial and failing to object to insufficient notice waived any compliant. *See, e.g.*, *Stallworth v. Stallworth*, 201 S.W.3d 338, 346 (Tex. App.—Dallas 2006, no pet.) (recognizing that any error from failing to

---

[2] Although refers to the trial court's judgment as a "default judgment" throughout his brief, he does not dispute that he participated in part of the trial.

provide proper notice of trial setting is "waived if the party proceeds to trial and fails to object to the lack of notice").

We overrule Diogu's second issue.

## SUBJECT-MATTER JURISDICTION

In his third issue, Diogu contends that the trial court lacked subject-matter jurisdiction because (1) claims related to Diogu's filing a lis pendens were no longer live at the time Aporn filed her counterclaims, (2) Aporn lacked standing to pursue her claims because she did not, at the time of trial, own the real property that was the subject of the lis pendens, and (3) Diogu had an absolute privilege to file the lis pendens.

The existence of subject-matter jurisdiction is a question of law we review de novo. *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

### A. Mootness and Standing

Diogu's mootness and standing claims are related; he claims that Aporn's claims are moot because Diogu lifted the lis pendens on her property before she brought her counterclaims, and that Aporn lacks standing because she did not, at the time of trial, own the property that had been burdened by the lis pendens.

"The mootness doctrine precludes a court from rendering an advisory opinion in a case where there is no live controversy." *Robinson v. Alief Indep. Sch.*

12

*Dist.*, 298 S.W.3d 321, 324 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (citing *Camarena v. Tex. Emp't Comm'n*, 754 S.W.2d 149, 151 (Tex.1988)). "A case becomes moot when: (1) it appears that a party seeks to obtain a judgment upon some controversy, when in reality none exists; or (2) a party seeks a judgment upon some matter which cannot have any practical legal effect upon a then existing controversy." *Id.* (citing *Mollinedo v. Tex. Employment Comm'n*, 662 S.W.2d 732, 738 (Tex. App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

Standing is a component of subject-matter jurisdiction and is a constitutional prerequisite to maintaining a lawsuit. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). "The standing doctrine requires that there be a real controversy between the parties that will be actually determined by the judicial declaration sought." *Wolfe v. Devon Energy Prod. Co., LP*, 382 S.W.3d 434, 443 (Tex. App.—Waco 2012, pet. denied) (citing *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005)). "When a case becomes moot, the parties lose standing to maintain their claims." *David Powers Homes, Inc. v. M.L. Rendleman Co., Inc.*, 355 S.W.3d 327, 334 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Aporn's counterclaims included: (1) claim for wrongful filing of a notice of lis pendens on Aporn's homestead property, *see* TEX. CIV. PRAC. & REM. CODE § 12.002, seeking statutory damages in the form of actual damages, court costs,

13

attorneys' fees and exemplary damages, (2) claim for intentional infliction of emotional distress, caused by Diogu's "intentional and/or reckless conduct including . . . knowingly making and publishing false accusations that Ms. Aporn engaged in criminal activity . . . and falsely filed official public documents without legal basis or justification encumbering Ms. Aporn's homestead property," (3) request for declaratory judgment that filing of notice of lis pendens was improper, and an order to remove the lis pendens from the property records, and (3) request for sanctions and attorneys' fees pursuant to section 10.002 of the Texas Civil Practice and Remedies Code and Rule 13 of the Texas Rules of Civil Procedure.

Diogu has failed to demonstrate that these claims were rendered moot by his voluntarily lifting the notice of lis pendens. Aporn's pleadings seek monetary damages for injuries she alleged were caused in part by the notice of lis pendens while it was in effect. The voluntary lifting of that notice of lis pendens does not render those claims for monetary damages moot. *See, e.g.*, *James v. Calkins*, 446 S.W.3d 135, 144 (Tex. App.—Houston [1st Dist.] 2014, pet. filed) (plaintiff's voluntary nonsuit did not moot defendant's claims for costs, fees, and sanctions).

Diogu has likewise failed to demonstrate that Aporn lacked standing to maintain her claims. "[I]ndividual standing contains three elements: (1) the plaintiff must have suffered an 'injury in fact,' an invasion of a legally protected interest that is concrete and particularized, and that is actual or imminent rather

14

than conjectural or hypothetical, (2) the injury is fairly traceable to the challenged action of the defendant and not the independent action of a third party not before the court, and (3) it must be likely that the injury will be redressed by a favorable decision." *Save our Springs Alliance, Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 878 (Tex. App.—Austin 2010, pet. denied). Even if evidence was presented at trial that Aporn sold her house before trial, she seeks redress for personal injuries she is alleged to have incurred when she *was* the property's owner. Her asserted claims identify (1) an injury in fact (i.e., monetary harm and costs caused by the notice of lis pendens's cloud on her title, as well as emotional distress), (2) injury traceable to Diogu's actions, and (3) and injuries redressable by damages. Diogu has not established that Aporn lacked standing to maintain her claims.

### B. Absolute Judicial Privilege

Next Diogu contends that the trial court lacks subject-matter jurisdiction over Aporn's claims because his actions are subject to an absolute judicial privilege. "An absolutely privileged communication is one for which, by reason of the occasion upon which it was made, no remedy exists in a civil action for libel or slander." *Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 166 S.W.2d 909, 912 (1942). When the absolute privilege applies to a communication, there is no action in damages, "and this is true even though the language is false and uttered or published with express malice." *Id.*; *see also Hurlbut v. Gulf Atlantic Life Ins. Co.*,

749 S.W.2d 762, 768 (Tex. 1987) (stating that when absolute privilege applies, "the actor's motivation is irrelevant" and privilege is "not conditioned upon the honest and reasonable belief that the defamatory matter is true or upon the absence of ill will on the part of the actor"). Thus, the absolute privilege may be properly characterized "as an immunity." *Hurlbut*, 749 S.W.2d at 768.

The trial court entered judgment for statutory damages against Diogu in favor of Aporn under section 12.002 of the Texas Civil Practice & Remedies Code, which provides:

> (a) A person may not make, present, or use a document or other record with:
>
> (1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;
>
> (2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and
>
> (3) intent to cause another person to suffer:
>
> > (A) physical injury;
> >
> > (B) financial injury; or
> >
> > (C) mental anguish or emotional distress.
>
> . . . .
>
> (b) A person who violates Subsection (a) or (a-1) is liable to each injured person for:
>
> (1) the greater of:
>
> > (A) $10,000; or

(B) the actual damages caused by the violation;

(2) court costs;

(3) reasonable attorney's fees; and

(4) exemplary damages in an amount determined by the court.

(c) A person claiming a lien under Chapter 53, Property Code, is not liable under this section for the making, presentation, or use of a document or other record in connection with the assertion of the claim unless the person acts with intent to defraud.

TEX. CIV. PRAC. & REM. CODE § 12.002.

Diogu cites several cases for the proposition that the filing of a lis pendens is absolutely privileged. *Bayou Terrace Inv. Corp. v. Lyles*, 881 S.W.2d 810, 818 (Tex. App.—Houston [1st Dist.] 1994, no pet.) (on reh'g) ("However, lis pendens is a part of the judicial process and the resulting absolute privilege bars a suit for damages arising from the filing of the lis pendens."). All of these cases, however, precede the enactment of section 12.002, which recognizes a statutory remedy for a fraudulently filed notice of lis pendens. Diogu has not cited any cases, and we have not located any, holding that the statutory cause of action provided in section 12.002 is barred by an absolute privilege.[3] We decline to so hold.

Because we have rejected each of Diogu's challenges to the trial court's subject-matter jurisdiction, we overrule his third issue.

---

[3] This same privilege argument was made by the appellant in *Brasch v. Lane*, 2011 WL 2183876, at *6 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (mem. op.), but we concluded in that case that the issue had not be adequately preserved for appeal.

17

## JURY DEMAND

In his fourth issue, Diogu argues that the trial court erred in entering judgment on a bench trial because he had made a jury demand.

To obtain a jury trial in a civil matter, a party generally must make a written demand at least thirty days before the trial date and pay the jury fee. TEX. R. CIV. P. 216. "A party waives his right to a jury trial by failing to object when the trial court instead undertakes to try the case before the bench." *Rodriguez v. Tex. Dep't of Mental Health & Mental Retardation*, 942 S.W.2d 53, 56 (Tex. App.—Corpus Christi 1997, no pet.). "Failure of a party to appear for trial shall be deemed a waiver by him of the right to trial by jury." TEX. R. CIV. P. 220.

The record before us indicates that the trial court called this case to a bench trial the morning of April 23, 2014. When Diogu did not show for trial, the court located him and continued the trial to the afternoon to give him an opportunity to appear and participate. Trial thus began the afternoon of April 23, 2014 with all parties present and participating, and then the trial was recessed until April 28, 2014. On April 25, 2014, two days after the trial began, Diogu filed a motion to strike the case from the non-jury docket, as well as strike all the evidence previously introduced. On April 28, 2014, Diogu filed an amended motion to strike the case from the non-jury docket, and indicated that he did not intend to participate further in the non-jury trial.

On May 12, 2014, the trial court entered judgment.

Because there is no reporter's record from trial, we do not have a record before us indicating that Diogu objected to commencement of a bench trial. *Rodriguez*, 942 S.W.2d at 56. This issue is not adequately preserved for appeal.

We overrule Diogu's fourth issue.

## MOTION FOR NEW TRIAL

In his fifth issue, Diogu argues that—for the same reasons he articulated in his first four issues—the trial court abused its discretion by denying his motion for new trial. *Xenos Yuen v. Fisher*, 227 S.W.3d 193, 205 (Tex. App.—Houston [1st Dist.] 2007, no pet.). We have overruled each of Diogu's first four issues. Diogu makes no other argument in support of his fifth issue.

We overrule Diogu's fifth issue.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Massengale.

19